MARCUS A. BELL, plaintiff in error, *vs.* BOYD & BRUMBY, defendants in error.

1. Parol evidence was admissible to show whether the parties intended the receipt given to the defendants by the assignees of the lease contract, to be a settlement of all future liability of the defendants for rent, or was only meant as a discharge of whatever the assignees could claim by the transfer to them, and was not to affect the rights of the lessor, under a reassignment of the lease to him.
2. The evidence fully sustained the judgment of the justice, and it should not have been set aside.

Evidence. New trial. Before Judge HOPKINS. Fulton Superior Court. October Term, 1874.

On June 10th, 1873, Bell leased to Boyd & Brumby a storehouse for the period of two years from August 15th succeeding, at $25 00 per month. On the same day Bell transferred said instrument to Longley & Robinson, with right to collect rents, but to be re-transferred on his paying them "as per contract." Boyd & Brumby held a duplicate of this lease, except as to the indorsement of transfer. Cn March 21st, 1874, Boyd & Brumby paid to Longley & Robinson $175 00, taking the following receipt on their duplicate lease.

"Received, Atlanta, Georgia, March 21st, 1874, of C. R. Brumby, $175 00, on account of rents of the property described in the within contract of lease, the said lease having been assigned and transferred to us by Marcus A. Bell, and in consideration of said sum we hereby release and discharge the said C. R. Brumby and J. C. Boyd from all further liability to us for future rents upon said property.

(Signed) "LONGLEY & ROBINSON."

Bell *vs.* Boyd & Brumby.

On April 1st following, the lease was re-assigned by Longley & Robinson to Bell. The latter brought suit for $25 00 alleged to be due as rent for the month of June, 1874.

The evidence was very conflicting. Bell stated that Boyd & Brumby knew of the transfer of the lease to Longley & Robinson at the time it was made. This is emphatically denied by them. They testified that the first they knew of such transfer was in October, 1873, when Longley & Robinson demanded the rent for August and September. They then declined to pay because, in ignorance of such assignment, they had allowed Bell to become indebted to them for goods purchased at the store, which amounted to more than the rent then due.

Longley stated that at the time the receipt of March 21st, 1874, was given, it was distinctly understood between him and Boyd & Brumby, that such instrument was, in no wise, to affect the rights of Bell. That this question was discussed and it was explicitly understood that Boyd & Brumby were only released so far as the rights of Longley & Robinson were concerned. That he informed Boyd & Brumby that he intended to reassign the lease to Bell.

Brumby denied all of this and insisted that the $175 00 was paid in full discharge of any further liability on the part of his firm on the lease, and that it was so understood between the contracting parties. The evidence was undisputed to the effect that since March 21st, 1874, Boyd & Brumby had had nothing to do with the store; that immediately after said settlement they sent the key to Longley & Robinson; that Bell had attempted to deliver to them the key since but they had declined to receive it.

The magistrate rendered a judgment for plaintiff. On a *certiorari* to this judgment it was reversed and plaintiff excepted.

M. A. BELL, for plaintiff in error.

McCONNELL & HEYWARD, for defendant.

Bell *vs.* Boyd & Brumby.

TRIPPE, Judge.

1. The receipt given by Longley & Robinson, which was indorsed on the duplicate contract of lease held by Boyd & Brumby, carried an ambiguity on its face, and parol evidence is admissible to explain all ambiguities, both latent and patent: Code, section 3801.   The lease contract was made with Bell.   He was the lessor.   He transferred the contract to Longley & Robinson, reserving in the transfer that it should be reassigned to him on his paying them "as per contract." Bell testified that his lessees knew of the transfer when it was made.   Longley & Robinson, in March, 1874, after more than $225 00 rent had accrued, receipted Boyd & Brumby for $175 00, indorsing it on their duplicate contract, and stated in the receipt that "in consideration of said sum, we hereby release and discharge the said Boyd & Brumby from all further liability *to us* for future rents upon said property."   Longley & Robinson did not give up the contract which had been transferred to them by Bell.   Longley testified that when this receipt was given he distinctly stated to Boyd & Brumby that the contract was to be reassigned to Bell; that he intended to do so; that Bell's rights were not to be affected, and Boyd & Brumby were only released so far as the rights of Longley & Robinson were concerned.   Boyd & Brumby claim that by this receipt they were discharged from the lease; that they could surrender the house, and were no longer bound by the contract for any future rent. It was objected by them that Longley's testimony was not admissible, on the ground that parol evidence cannot vary a written contract.   We think it was admissible.   If Boyd & Brumby knew that Longley & Robinson had only a partial interest in the contract transferred to them by Bell, and that Bell had the right to have it reassigned to him, they could not, by an arrangement with Longley & Robinson, defeat that right of Bell.   They could not, knowing this, vacate, by any contract with Longley & Robinson, the whole contract of lease, even if the latter parties had so stipulated expressly.

It would have been in fraud of. the rights of Bell, and if Boyd & Brumby were cognizant of it, they could not set it up against Bell.    Here was a contract of lease that was not half expired.    For a sum less than had accrued of the rent, the holders of the contract, to whom it had been assigned with a condition, agreed that the lessees should be discharged from further liability *to them*.    The terms used indicate that the discharge granted in the receipt was a limited discharge, and implied that there was a right in somebody else.    We think, under these facts, all this testimony was competent.

2.  The evidence before the justice of the peace sustained the judgment which he rendered on the facts, and it ought not to have been disturbed.

Judgment reversed.