18940. HOUSING AUTHORITY OF CITY OF CARROLLTON *v.* AYERS *et al.*

730

ARGUED MAY 9, 1955—DECIDED JULY 13, 1955.

*Robert D. Tisinger, William J. Wiggins,* for plaintiff in error. *Candler, Cox, McClain & Andrews, Wright Gellerstedt, Shirley C. Boykin,* contra.

HAWKINS, Justice. (After stating the foregoing facts.) ▆▆ Headnotes 1, 2, 3, and 4 require no elaboration.

▆ The defendant, by its answer and cross-action, admitted the execution of the contract, and that the housing project had been completed, but denied liability to the plaintiff, and alleged that, because of the negligent performance of its services by the plaintiff, the defendant had incurred additional construction costs in a sum greatly in excess of the amount claimed by the plaintiff, and sought by way of recoupment to recover damages against the plaintiff. The defendant's cross-action alleged: that the plaintiff had negligently failed to provide sufficient footings or foundations for nine of the buildings on the original drawings or specifications of the architect, which deficiency was first discovered after construction was begun at these sites, and necessitated

acquisition of additional land by the Housing Authority and revision of the project drawings by the architect so as to relocate nine buildings on the newly acquired land; that the additional cost incurred by the Housing Authority as a result of this shifting of sites totaled approximately four times the amount which the architect seeks to recover, and that the Housing Authority is entitled to judgment on its cross-action against the architect for these added costs. Paragraph 13 of the cross-action alleges: "That when said contractor began construction of the buildings so designated as aforesaid, it was immediately determined by even superficial examination of the site location of said respective structures that the foundations designed by plaintiff were each and every one insufficient, inadequate and unsafe and would not support or bear the buildings designed by plaintiff at the site located by plaintiff and on the foundations planned and designed by plaintiff"; but, in paragraph 14 of the cross-action, it is alleged that this negligence consisted of the architect's "failure to determine the soil structure," and, in paragraph 24, in its "neglect in examination of sites." These allegations are insufficient to charge the architect with any negligence when viewed in the light of paragraphs 2 and 3 of the contract entered into between the architect and the Housing Authority, for, under the terms of this contract, the duty and responsibility of selecting the sites for the project and of ascertaining the subsoil conditions within the site area rested upon the Housing Authority, and not upon the architect. Paragraph 2 of this contract provided that "It is contemplated that the Local Authority will acquire a plot of land in the City of Carrollton, State of Georgia (precise information as to the location of such site to be included in the data furnished the Architect under Section 3, following)," and by paragraph 3 it is provided: "Information to Architect. To permit the Architect to perform the services required, the Local Authority shall supply, in proper time and sequence, all basic information regarding the improvement and the site selected therefor. . . The Local Authority further shall obtain and furnish the Architect necessary data on subsoil conditions within the site area."

While paragraph 9 of the cross-action alleges that "defendant supplied the plaintiff all information, tests or data requested of defendant by the plaintiff, or required of them under this con-

tract," and paragraph 10 alleges that "all information specified in the contract or requested by plaintiff, being furnished by defendant, yet nevertheless plaintiff designed footings, foundations and buildings for nine individual structures, and prepared bid plans therefor in which said plans for said buildings foundation structures were insufficient to bear the weight or overburden of said buildings"—these allegations were specially demurred to by paragraphs 5, 5a, 6, 6a, 7, and 7a of the plaintiff's demurrer, upon the ground that the allegations are vague and indefinite and do not put the plaintiff on notice as to what information was furnished the plaintiff by the defendant, or to whom or when said information was furnished; and that the allegations of paragraph 10, that "said buildings foundation structures were insufficient to bear the weight or overburden of said buildings," are too vague and indefinite to put the plaintiff on notice of how and in what manner said foundation structures were insufficient, and are merely the conclusions of the defendant without any facts upon which to base them. There were numerous other special demurrers to various general and vague allegations of the defendant's cross-action as to the insufficient, inadequate, and unsafe footings and foundations, upon the ground that they constituted merely the conclusions of the pleader without sufficient facts being alleged to support the conclusions, all of which we do not deem it necessary to set out in detail. The defendant failed to amend these allegations by furnishing the information called for by the special demurrers within the time provided in the order of the court, and the trial judge properly sustained these grounds of demurrer and struck these allegations from the cross-action. With such general allegations thus properly stricken, the cross-action of the defendant as to the damages alleged to have been sustained because of the alleged unsafe, inadequate, and insufficient footings and foundations of a portion of the buildings was based upon the alleged negligence of the architect in performing duties which under the terms of the contract rested upon the Housing Authority as to the selection of the site and the furnishing of necessary data on the subsoil conditions within the site area; and the trial judge properly sustained the demurrer to so much of the cross-action which sought to recover damages against the plaintiff because of the alleged unsafe, inadequate, and insuf-

ficient footings and foundations referred to. *Kahrs* v. *Kahrs,* 115 *Ga.* 288 (3) (41 S. E. 649) ; *Beck Duplicator Co.* v. *Fulghum,* 118 *Ga.* 836 (3) (45 S. E. 675) ; 35 Am. Jur. 97, §§ 354, 355.

In paragraphs 22 and 23 of the defendant's plea and answer, it is alleged: "(22) That the plans designed by plaintiff, the contract prepared for bidding and as executed, was not skillfully prepared or engineeringly feasible in that as originally planned a storm sewer was so designed as to cause a concentrated delivery of surface water on land to the west of Project 116-2 and to thus violate the lawful rights of said abutting owner in derogation of Georgia law, and thus constituted an accumulation and unnatural diversion onto the abutting owner of said water, all of which could have been foreseen and avoided by plaintiff by skillful engineering and designing"; and "(23) That after said contract was let defendant incurred an additional unwarranted expenditure of nineteen hundred twenty-nine and 67/100 ($1,929.67) dollars which was directly caused by the defective engineering of plaintiff in knowingly and while acting as the professional consultant and adviser of defendant, diverting surface water, concentrating the same, and dumping upon abutting owners, and defendant sues for said sum." The plaintiff demurred to paragraph 23 of the answer on the ground "that it is irrelevant and immaterial, in that it does not state a proper measure of damage and is not a proper subject matter for a cross-claim." This demurrer was sustained by the trial court, and the defendant excepted to that judgment. This we think was error. The law imposes upon persons performing architectural, engineering, and other professional and skilled services the obligation to exercise a reasonable degree of care, skill, and ability, which generally is taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by their respective professions. *Block* v. *Happ,* 144 *Ga.* 145 (86 S. E. 316) ; *Porter* v. *Davey Tree Expert Co.,* 34 *Ga. App.* 355 (2) (129 S. E. 557). And while it is true that, on the acceptance of the work by the owner after the architect has rendered the entire service for which he had contracted, the architect was authorized to proceed to collect the balance due him by the terms of the contract, any damage to the owner resulting through the negligent performance of the contract by

734

the architect is a matter for recoupment. *Block* v. *Happ*, 144 *Ga.* 145 (1), supra. Code § 20-1311 provides that "Recoupment is a right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract." The accumulation and unnatural diversion of surface water by one onto the lands ·of another is unlawful. *Cox* v. *Martin*, 207 *Ga.* 442 (62 S. E. 2d 164); *Rinzler* v. *Folsom*, 209 *Ga.* 549 (74 S. E. 2d 661). If, as alleged, the plaintiff prepared plans and a contract which produced such a result as could have been avoided by the use by the plaintiff of proper care and skill in the engineering and in the designing of the plans, and the defendant was thereby required to incur additional expenditures in order to correct the situation thus brought about, this would be a proper item of recoupment in reduction of the plaintiff's demand. *Block* v. *Happ*, supra; *Freeney* v. *Pape*, 185 *Ga.* 1, 4 (7) (194 S. E. 515). The trial judge erred in sustaining the demurrer to this portion of the defendant's plea and cross-action and in thereafter making the mandamus absolute, without submitting the issue thus raised to a jury. *Walden* v. *Nichols*, 201 *Ga.* 568 (40 S. E. 2d 644); 35 Am. Jur. 99, § 356.

7. Other special demurrers not specifically dealt with were properly sustained; but, under the ruling made in the 6th division of the opinion, it was error to sustain the general demurrer and dismiss the entire answer and cross-action of the defendant and to make the mandamus absolute.

*Judgment affirmed in part and reversed in part. All the Justices concur.*