43163. DOUGLAS v. HERRINGDINE et al.

ARGUED NOVEMBER 9, 1967—DECIDED DECEMBER 5, 1967— REHEARING DENIED DECEMBER 20, 1967—CERT. ▮▮▮▮▮▮

*G. L. Dickens, Jr.,* for appellant.

*Joseph B. Duke, Cubbege Snow, Sr.,* for appellees.

DEEN, Judge. ■ The collision occurred on June 4, 1965. Error is enumerated on the court's allowance, over objection that it was hearsay and a self-serving declaration, of testimony by Linda Herringdine's father that she told him that same afternoon that she was on her right-hand side of the road at the time of the collision. The following day she gave a statement to an insurance adjuster in which she stated that she did not see the plaintiff prior to the impact but the collision seemed to have occurred in about the middle of the road. On September 22 she was examined by deposition and stated that she was on the right side of the road when she saw the plaintiff approaching and that plaintiff was in her lane of traffic. Error is assigned to the ruling of the court allowing defendant's counsel to read this deposition to the jury following her testimony, which was to the same effect. Ann Ruth also gave testimony contended to be at variance with prior statements which the plaintiff introduced for purposes of impeachment. Thereafter, the court charged: "Plaintiff's counsel has questioned the defendants as to statements made to an insurance adjuster by Linda Herringdine the day after the accident. In this connection, I charge you that the law of Georgia declares that admis-

sions of a party must be closely scanned and received with care by the jury. . . Plaintiff's counsel has likewise examined Miss Ann Ruth, a witness offered by the defendants, as to statements made by Miss Ruth to an insurance adjuster three days after the accident. These statements were admitted for your consideration in determining whether Miss Ruth had been impeached by previous contradictory statements. In this connection, I charge you that you may, in determining whether Miss Ruth has been impeached, consider the time the statements were made, the condition of Miss Ruth, and all of the circumstances existing at the time. It is for you to determine what credit you will give the testimony of Miss Ruth. *I charge you that you are entitled to believe the testimony of Linda Herringdine and Miss Ann Ruth even though you conclude that they made previously contradictory statements to the insurance adjuster.*" Particular objection was made to the last sentence of the above excerpt.

(a) Where an attempt is made to impeach a witness by proof of prior contradictory statements under *Code* § 38-1803, the proper method of sustaining him is by proof of good character. "A witness sought to be impeached by proof of contradictory statements can not be supported by proof that he made elsewhere other statements consistent with his testimony on the stand." *Cook v. State*, 124 Ga. 653 (1) (53 SE 104). And this is true even though the latter were made under oath on a previous trial of the same case. *Estill v. Citizens & Southern Bank*, 153 Ga. 618 (5) (113 SE 552). There are exceptions to the rule, such as that in *Fuller v. State*, 197 Ga. 714 (2) (30 SE2d 608), where the statements sustaining the testimony were permitted as being made at a time when a motive for falsification did not exist. Another exception might be where the witness denies having made the statement imputed to her, but this does not appear here. It was therefore error to permit the defendant's father to testify that she had told him on the afternoon of the wreck that she was on her own side of the road. The same ruling applies to the reading of the depositions, which are ordinarily inadmissible when the witness who gave the deposition is actually present and testifies, except for purposes of impeach-

ment. It is contended, however, that the court had power to allow the deposition read under *Code Ann.* § 38-2101 (d) (4) which provides: "The deposition of a witness, whether or not a party, taken upon oral examination, may be used in the discretion of the trial judge, even though the witness is available to testify in person at the trial. The use of the deposition shall not be ground for excluding the witness from testifying orally in open court." While we think the purpose of this section was other than as a vehicle to allow a witness to testify twice to the same effect, it is not the admission of the deposition *per se* which is harmful, but the fact that it, like the testimony of the defendant father, is an attempt to support the testimony by proof that the witness made the same statements elsewhere, which cannot be done. These rulings constituted error which the court underlined by instructing the jury that they were entitled to believe these particular witnesses "even though you conclude that they made previously contradictory statements to the insurance adjuster," without adding that they might do so only if they believed the witness' statements on the stand to be the truth rather than the prior contradictory statements. *Ector v. State,* 120 Ga. 543 (2) (48 SE 315). It is the better practice when charging on the impeachment of witnesses, not to call by name the witness attacked. *Jefferson Standard Life Ins. Co. v. Bentley,* 55 Ga. App. 272, 285 (190 SE 50).

■ Error is also enumerated on the failure of the trial court, having undertaken to charge on the impeachment of witnesses by proof of contradictory statements, to charge fully on the subject. The rule is of course that where the judge undertakes so to charge, he should charge fully on all aspects of impeachment authorized by the evidence (*Georgia Land & Securities Co. v. Chapman,* 25 Ga. App. 185 (4) (103 SE 414)), but it was formerly held that failure to do so in the absence of request was not ordinarily reversible error. *Millen & S. W. R. Co. v. Allen,* 130 Ga. 656 (61 SE 541). This latter rule has been definitely modified in view of *Code Ann.* § 70-207 which conditions appellate review upon objection at the time the instruction is given and thus effectively calls it to the court's attention. Objection was made here to the instructions on impeachment on the ground

that the court should have charged *Code* § 38-1806, including the language that "if a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." "But before this principle of such total rejection, with a duty of the court to charge the jury thereon, will have application, it must manifestly appear, not only that the witness on one or the other occasion has sworn falsely on a material matter, but that he has done so wilfully and knowingly. The rule does not extend to situations where it is shown to be reasonably possible that the discrepancy was occasioned by 'mistake or the failure of memory.'" *Smaha v. George,* 195 Ga. 412, 418 (24 SE2d 385). The witness here stated on the stand that both her testimony and her former statements were true, and it is contended this could not be possible. Her explanation was that she stated the truth at all times insofar as she remembered it, but that immediately after the wreck she had been unable to think of all the details which later recurred to her. This enumeration of error is without merit.

■ Where the physician who treated the witness Ann Ruth testified that he placed her under sedation for pain on June 5, and that she was still receiving sedation on June 7, at which time she made the alleged statements contradictory to her testimony, it was possible that as a result of the sedation she could have been less alert than she would otherwise have been, the testimony was not inadmissible as being pure speculation or an unwarranted conclusion. *Ga. S. & F. R. Co. v. Haygood,* 103 Ga. App. 381 (2) (119 SE2d 277).

■ Regarding the various exceptions to the instructions of the court on the doctrine of emergency, a charge on the subject was authorized by testimony clearly showing that because of the topography neither driver could see the other until plaintiff crested the hill, and that the vehicles were about 120 feet apart and obviously on a collision course before either driver recognized the peril created thereby. The instruction that if the jury found that plaintiff was in defendant's line of traffic, creating an emergency for the defendant she "would not be charged with negligence because she drove her automobile to the left

side of the road" is, however, inaccurate. Emergency "does not relieve one of the obligation to exercise ordinary care, but it is merely one of the circumstances which are proper for consideration in determining whether ordinary care has been exercised." *Luke v. Powell*, 63 Ga. App. 795, 804 (12 SE2d 196). Whether, if the jury believed such fact situation existed, and that the defendant did turn her vehicle to the left and therefore into rather than away from the path of the oncoming car, she should be found negligent, still remained for their consideration.

■ Under the evidence in the case the jury might have found either the plaintiff or the defendant to have been over the center line of the roadway, or they might (as they apparently did) have reached the conclusion that both drivers were at fault. The evidence did not demand a verdict for the plaintiff.

*Judgment reversed. Jordan, P. J., and Quillian, J., concur.*