## 54761. WOODS et al. v. ANDERSEN.

McMURRAY, Judge.

This case involves a wrongful death action brought by the mother of the deceased, a 6 1/2 year old child who was killed while riding a bicycle which was struck by a van truck owned and operated by the defendant Parcel Delivery Company and driven by the co-defendant Woods. Verdict and judgment was returned for plaintiff in the amount of $155,000 damages for the "full value of" the deceased's life.

Defendant Parcel Delivery Company filed a motion for new trial which was denied, and it appeals along with Woods who filed no appeal until eighty-nine days later and after entry of the judgment denying the motion for new trial. The defendants appeal contending the trial court erred in overruling their objection to a hypothetical question posed to an expert witness, in denying the motion to strike an expert's opinion allegedly based on hearsay; and in overruling their motion to strike an expert's opinion based on "the present cash value of the economic loss of . . . [the deceased] . . . on the grounds that . . . as to the dollar amount he [the expert] incorporated thereon an opinion" as to inflationary trends continuing "at the rate of 5% a year" as being "too speculative and remote" as a matter of law. Defendants also contend the court erroneously charged the jury, should have granted their motion to compel discovery, and the verdict was excessive and was unsupported by the evidence. *Held:*

1. Since we affirm the judgment, we need not consider the separate motion to dismiss the appeal of defendant Woods.

2. Defendants raised no objection as to the qualifications of plaintiff's expert witness, a professor of finance at Georgia State University whose particular expertise was in the field of the evaluation of earning capacities of businesses and individuals. Defendants contend though, that the trial court erred in overruling their objection to the following hypothetical question: "In the case of Heather Lynn Andersen [the deceased], have you projected what a six year old child whose parents were college graduates, the mother a school teacher, the father

a lawyer: have you projected what the child might have been expected to earn if it had lived to a full life expectancy, but had only graduated from high school? . . . Could you give the jury the benefit of . . . your opinion?" Defendants objected "to him stating an opinion until he states the basis of the opinion and what facts he bases them on." We find no merit in defendants' objection, and the trial court properly overruled it.

Contrary to defendants' contention, the posed question *did* set out facts upon which the expert based his opinion. Moreover, prior to the question, facts identical to those posed therein had been presented in evidence as descriptive of the deceased. Also, the expert testified, prior to the question, that facts such as those posed were reliable indicators of what the deceased would have earned in her lifetime had she not met a premature demise. "In propounding a hypothetical question . . . it is not essential to the admissibility of evidence that there should be a complete resume of every fact entering into and involved in the case." *Davis v. State,* 153 Ga. 669, 675 (113 SE 11). The reasoning the expert used in reaching his opinion may be explored on cross examination and need not be presented *in toto* as a condition precedent to admissibility. The subject was a proper one for expert testimony; the court properly allowed the question, and it remained for the jury to decide what weight to give the expert opinion. Code § 38-1710; *Dual S. Enterprises, Inc. v. Webb,* 138 Ga. App. 810, 814 (5) (227 SE2d 418).

3. Defendants contend the trial court incorrectly overruled their motion to strike the expert testimony because it was based, in part, on hearsay evidence. We disagree. On cross examination of the expert, it was revealed that his opinion as to the economic value of the deceased's life was partly based upon United States Department of Labor and Bureau of the Census research statistics concerning average wages of people in various categories of age, education, occupation, etc. The expert testified that the figures he gleaned from the government reports were recognized as accurate and reliable in the fields of economics and statistics. The fact that an expert opinion is based in part upon hearsay goes to the weight and not to the admissibility of the opinion testimony. *Ga.*

*Power Co. v. Edwards,* 136 Ga. App. 135 (2) (220 SE2d 460); *City of Atlanta v. McLucas,* 125 Ga. App. 349 (2) (187 SE2d 560). "The opinion of an expert as to what conclusions may be properly drawn from statements in scientific works pertaining to his profession, amounts to something more than mere hearsay, and may be very valuable in elucidating a given scientific inquiry." *Mayor of Jackson v. Boone,* 93 Ga. 662, 663 (20 SE 46). There is no merit in this complaint.

4. "The opinions of experts, on any question of science, skill, trade, or like questions, shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." Code § 38-1710. The opinion testimony of an expert can be based upon hypothetical questions and though the jury is allowed to receive the testimony of experts the jury is not bound by such testimony; such testimony is not conclusive or controlling and is submitted for whatever the jury considers it to be worth. The jury can consider such expert opinion testimony by reference to their own experience and may discard the opinion of experts entirely. " 'The jury can believe opinion evidence or expert testimony in part or in whole or reject it in favor of other evidence. They can give it such weight as they think it ought to have. They can disregard it and substitute their own knowledge and experience.' *Holmes v. Harden,* 96 Ga. App. 365, 371 (8) (100 SE2d 101)." *Ford Motor Co. v. Hanley,* 128 Ga. App. 311, 315 (2) (196 SE2d 454). These cases allow the conclusions of an expert to be given when founded on stated facts, "although to some degree speculative." See *Douglas v. Herringdine,* 117 Ga. App. 72 (3) (159 SE2d 711). See also *Dual S. Enterprises v. Webb,* 138 Ga. App. 810, 814 (5), supra, holding that an expert's opinion based on insufficient factual foundation affects the weight, but not the admissibility, of the expert's testimony. Attention is also called to *Mayor &c. of Jackson v. Boone,* 93 Ga. 662 (1), 663, supra.

In this instance the expert had testified that the figures he gleaned from government reports were recognized as accurate and reliable in the fields of economics and statistics of which he had qualified as an expert.

In *Henry Grady Hotel Corp. v. Watts,* 119 Ga. App. 251 (4), 256-257 (167 SE2d 205), this court held: "there was no error in offering expert opinion testimony showing statistical averages of lifetime earnings of high school graduates and normal life expectancy." The expert witness in the *Henry Grady Hotel* case was qualified as an expert in the field of actuarial science. He was basing his testimony on his special knowledge in the field of statistics and testified as to lifetime salaries of high school graduates of average intelligence "based on statistical averages taking into account mortality tables, certain *inflationary trends,* and methods of reducing figures arrived at to present cash values." (Emphasis supplied.) The expert in that case used an annual wage increase factor of 3 1/2%. In the *Henry Grady Hotel* case and the case sub judice, the expert utilized mortality tables to estimate the life expectancy, projected earnings assuming that the person would enter her lifetime work at age 18 and an annual wage increase factor (3 1/2% as opposed to 5% used here). The *Henry Grady Hotel* case is directly in point here.

The witness clearly stated that any judgment awarded today in this case should be invested safely at the rate of 7% for the foreseeable future because investment communities "are taking into consideration the expectation of future inflation at a higher level than 5%," and that in his opinion the 5% figure was very conservative, that it has been 5% over the last 60 years on average and that it is probably going to be more in the future than it has been in the past, that his testimony does not mean that we would not have recessions or that it would be 5% every year. He also testified that the 5% yearly inflationary increase was merely his opinion, "that the general wage level will be at the average annual rate over the period of time between 1977 and 2034, at the average annual rate of 5% per year." The witness' testimony was as to a general economic trend. This is exactly the same type testimony as the expert gave in the *Henry Grady Hotel* case, except there the annual rate was 3 1/2%.

The court did not err in refusing to strike the expert's testimony on the grounds that it was too vague and speculative to be considered.

5. We find no error in the charge given. *Seaboard C. L. R. Co. v. Duncan,* 123 Ga. App. 479, 481 (181 SE2d 535); *Atlantic, V. & W. R. Co. v. McDilda,* 125 Ga. 468, 471 (54 SE 140).

6. We find no abuse of discretion in, and therefore will not interfere with, the trial court's refusal to compel plaintiff to answer a particular interrogatory. *Redwing Carriers v. Knight,* 143 Ga. App. 668 (9), 676 (239 SE2d 686); CPA § 26 (b) (4) (Code Ann. § 81A-126 (b) (4)).

7. The evidence was sufficient to support the verdict, hence the general grounds of the motion for new trial are not meritorious. Nor can it be said that the verdict was excessive since there is no evidence of bias, prejudice or corrupt influence. *Atlantic Greyhound Corp. v. Austin,* 72 Ga. App. 289 (3) (33 SE2d 718); *Central Chevrolet, Inc. v. Campbell,* 129 Ga. App. 30 (6), 32 (198 SE2d 362).

*Judgment affirmed. Quillian, P. J., and Banke, J., concur. Deen, P. J., and Shulman, J., concur specially. Bell, C. J., Webb, Smith and Birdsong, JJ., dissent.*

Argued October 31, 1978—Decided March 17, 1978 — Rehearing denied March 31, 1978.

*Greene, Buckley, DeRieux & Jones, Burt DeRieux, Eileen Crowley,* for appellants.
*Lokey & Bowden, Glenn Frick, Robert P. Bleiberg,* for appellee.

Deen, Presiding Judge, concurring specially.

In this case we are dealing with admissibility of speculative scientific expert opinion evidence as to economic value.

This writer, while attending the September 23, 24, 1977, Conference of Judges, Scientists and Lawyers on "The Use of Scientific and Technical Evidence in Formal Judicial Proceedings" held at the National Science Building in Washington, D. C., submitted the following proposal, which I believe is applicable and relevant in this case.

There are four classifications of scientific, technical

or other specialized knowledge, expert evidence:

*Nonspeculative, Class A.* Exact or true science is anything that technically or scientifically can be observed and demonstrated, tested and falsified by experiment and repeated over and over under similar conditions. This is provable science and evidence which is uncontradicted among the scientific community. That evidence which has been proven and is not speculative may be judicially noticed by the courts as no further proof in court is needed. *Rome R. &c. Co. v. Keel,* 3 Ga. App. 769 (60 SE 468) (1907). Compare *Cornett v. Agee,* 143 Ga. App. 55 (237 SE2d 522) (1977), wherein the second law of thermodynamics is noticed as the most well recognized law in science. As a further example, Louis Pasteur has long ago demonstrated that life only comes from life, and no one now questions this fact.

*Speculative Class B, C, and D.* All expert evidence that is not exact science or that is subject to being disproved may not be judicially noticed. "Courts should never take judicial cognizance of anything that is subject to be disproved." *Irwin v. Torbert,* 204 Ga. 111, 125 (49 SE2d 70) (1948). Class D evidence is that type of speculative evidence which neither the General Assembly nor courts recognize. One example is results of a polygraph or lie detector test. This evidence moves up into Class C category only with the stipulation and agreement by both parties to utilize same in a court of law. Class B evidence is also speculative but is that which has been approved by the General Assembly and the courts. An example is blood, ballistics, breathalizer and fingerprints evidence which are all admissible with an expert's opinion relating to his findings and opinions as to this evidence. Class C evidence is more speculative, less trustworthy and that which has not been approved by the General Assembly but is still admissible by the courts. An example would be results of the polygraph test only when stipulated and agreed to by both parties.

In summary, Class A, nonspeculative expert evidence, is most trustworthy, as it is exact and proven science. Judicial notice of it may be taken because no further proof is required. Classes B, C and D are all speculative expert evidence and become progressively

less trustworthy as we move away from Class A. In fact, the jury is generally charged that they may reject all testimony of the experts (B, C & D) and use their own common sense based on cause and effect. "An expert need not give reasons for an opinion . . . but, if the expert does give reasons, and it appears that the opinion is not based on sheer speculation, then this court cannot second guess the methodology utilized to reach the opinion." *Peachtree Mtg. Corp. v. First Nat. Bank,* 143 Ga. App. 17, 19 (237 SE2d 416) (1977).

The expert in the case sub judice knows the general historical facts of the present and past inflation. To extrapolate into the future that which has already occurred is not unreasonable, although highly speculative, but it is not *sheer* speculation. On the other hand, for example, spontaneous generation does not *now* occur, and for an expert to extrapolate into the past something that we know does not occur would not only be inadmissible speculation but *sheer* speculation, both impossible and incredible! Sheer speculative methodology is all, as in Class D expert evidence, that is proscribed as suspect and nontrustworthy. All Class A, B and C evidence of opinions of experts should be admissible. If in doubt, as bordering on the penumbras of C or D, then it should be admitted. I would affirm the case as the jury may have even rejected the expert opinions and used their own common sense based on cause and effect as provided by the Georgia law on evidence.

SHULMAN, Judge, concurring specially.

While philosophically I share the dissent's concern over the use of expert testimony based on annual inflation factors, legal considerations compel me to join the majority.

1. *Henry Grady Hotel Corp. v. Watts,* 119 Ga. App. 251 (4) (167 SE2d 205) clearly holds that expert opinion testimony virtually identical to that in the case at bar (i.e., based on an annual wage increase factor) is admissible and may be presented for jury consideration when accurate. Moreover, the *Henry Grady Hotel* holding that the verdicts were not excessive as a matter of law necessarily approves of the use of the kind of statistical

averages involved herein as competent and legal evidence that, if accurate, will authorize a verdict. See, e.g., *Atlantic C. L. R. Co. v. Brown,* 82 Ga. App. 889 (2) (62 SE2d 736) (if there is any evidence upon which the jury might hinge their finding, and this evidence is competent and legal, this court will not ordinarily disturb verdict as excessive). See also *Leonard v. Kirkpatrick,* 118 Ga. App. 277 (1) (163 SE2d 340) (jury may take inflation into consideration in awarding damages for loss of future earnings).

2. Recognizing that most expert testimony is to some degree speculative, the question presented here is whether the expert testimony in this case became inadmissible because the particular wage increase factor used (5% per year) rendered the estimates based thereon *too* speculative as a matter of law. I would not so hold.

Here, the expert gave the underlying basis which supported the annual wage increase factor used in his extrapolations and demonstrated his opportunity of forming a correct opinion. This evidence was legal and competent. It provided the jury with a means to ascertain with reasonable certainty the amount of damages. It was not, therefore, too speculative.

"[P]roper evidence of this sort should militate against arbitrary and capricious verdicts, and is therefore admissible under the exigencies of the case." *Henry Grady Hotel,* supra, p. 257.

SMITH, Judge, dissenting.

This court should not countenance the admission into evidence of testimony which amounts to pure conjecture. I therefore dissent from Division 4 of the majority opinion and would reverse the judgment of the trial court.

Appellee's expert offered the following opinions as to the present cash value of the amount of money the deceased would have earned during the "working period" of her lifetime, between and including the ages of 18 and 65, had she not died prematurely: (1) Assuming she received a high school education and stayed single, the value would be $398,206; (2) Assuming she received a college education and remained single, the value would be

$567,042; (3) Assuming she received a high school education and married, the value would be $493,769; (4) Assuming she received a college education and married, the value would be $587,625. On cross examination the expert testified that, in order to formulate the opinions he gave, he used a basic, average wage of an 18-year-old female in the mid-1970's and inflated it by a multiplier of .05 *per year* in order to calculate the deceased's supposed wage on her entering the labor force in 1987, when she would have reached the age of 18. The expert then utilized a basic, average wage for a 19-year-old female in the mid-1970's and inflated that figure by the multiplier of .05 per year in order to calculate the deceased's wage at age 19, in 1988. The expert extrapolated as stated for each year the deceased would have been in the labor force, until he reached the year 2034, when she would have been 65 years old. He then added together the acquired, annual wages in order to arrive at the deceased's economic value in a normal lifespan. The expert reached the different opinions set out above by following this procedure including as a basic premise the assumption that inflation, or wage increases, would continue at a rate of 5% annually from the mid-1970's until 2034. By using that premise the expert testified as to his conclusion, for example, that, in the year 2033, when the deceased would have been 64, she would have earned $135,000 had she received only a high school education. This salary, of course, stands in sharp contrast to the $9,167 average salary a high-school-educated woman of today earns in her sixty-fourth year.

Should the trial court have granted appellants' motion to strike the expert's testimony because it incorporated as a basic premise thereof the annual inflation multiplier (also known as a "wage rise factor")? I answer affirmatively. Notwithstanding the majority's conclusion to the contrary, *Henry Grady Hotel Corp. v. Watts,* 119 Ga. App. 251 (4) (167 SE2d 205) (1969), is inapposite and the question is one of first impression in Georgia. The court in *Henry Grady Hotel* summarized the expert witness' testimony, which it found admissible, as follows: "based on 1959 figures, a high school graduate entering upon his lifework at age 18 could reasonably be

expected to receive lifetime earnings of $254,000; figuring the lifetime earnings at no more than minimum wage the figure would amount to $154,086; based on a present 3 1/2% annual wage increase factor the figure would be $560,000, and without wage rise factors but with a college education it would amount to $583,364. Such figures reduced to present cash values were in a range between 1/3 and 1/2 of the gross amounts." Id., p. 256. The factor distinguishing that case from the one at hand is that, there, no objection was raised as to "the accuracy of the facts to which he [the expert] testified." Id., p. 257. Here, the appellants moved to strike the expert testimony because the factual assumption as to inflation was "too speculative."[1] Neither is Grunenthal v. Long Island R. Co., 393 U. S. 156, 89 SC 331 (1968), applicable, as the Supreme Court there dealt only with the issue of the sufficiency of the evidence to support an award.

I find persuasive the reasoning of Bach v. Penn Central Transportation Co., 502 F2d 1117 (6th Cir., 1974), which held, at p. 1122: "In recent history inflation has been so persistent that it is difficult to conceive that the purchasing power of the dollar might remain constant through the year 2000. On the other hand, the predictive abilities of economists have not advanced so far that they can forecast with any certainty the existence and rate of inflation for the next thirty years. Limited use of economists and other experts may be appropriate in some cases to show that raises in income or promotions would most probably occur. [Cit.] Yet testimony on the exact income that the decedent would have received through the year 2002 is so speculative, in our view, that it is inadmissible." See also Riha v. Jasper Blackburn Corp., 516 F2d 840 (8th Cir., (1975)). The opinion testimony, based on a particular and continuing rate of wage inflation and setting out the exact income the decedent would have earned in a particular year and the total she would have earned in her lifetime, amounted to speculation and should not have been admitted. *Douglas*

---

[1] Furthermore, *Henry Grady Hotel,* is a nonbinding, two-judge decision.

*v. Herringdine,* 117 Ga. App. 72 (3) (159 SE2d 711) (1967). As the Fifth Circuit Court of Appeals recently noted, "We . . . cannot so surely discern the shadow of inflation as a coming event as to warrant requiring its inclusion in a present rule for calculating future damages. The worsening of inflation might as readily foretell a recession or a depression as its continuity. Strong governmental counter-measures have been proposed and their efficacy is still unknown. Then too, if future inflation does cause higher wages, then experience predictably demonstrates that higher interest rates on investments which have always accompanied inflation will also occur and this factor will mitigate the failure to include an inflationary surcharge in wage rate calculations." Johnson v. Penrod Drilling, 510 F2d 234, 236 (5th Cir., 1975). I would not hold that evidence as to general economic trends is inadmissible, however, but only that an expert should not be allowed to testify as to the specific salary figures he has calculated by using an annual inflation multiplier or wage increase factor.

I am authorized to state that Chief Judge Bell joins in this dissent. Judge Webb and Judge Birdsong join specially in this dissent.

BIRDSONG, Judge, dissenting.

I agree that to allow an expert to predict the rate of inflation for sixty years to come is too speculative.

In arriving at the deceased's economic value, it is proper to utilize mortality tables to estimate life expectancy, and it is proper to assume that the deceased would have graduated from high school or college. It is also permissible to use today's figures regarding yearly wages of high school and college graduates, but to allow an expert to say that there will be five percent (5%) annual inflation for the next sixty years removes the estimate of economic value from predictability into speculation. As the expert witness himself testified, based upon a five percent annual inflation rate, a $12,000 Cadillac one hundred years hence would cost $1,500,000.

I am persuaded that the reasoning of the United States Court of Appeals, Fifth Circuit, in the case of Johnson v. Penrod Drilling, 510 F2d 234, 236, is sound

law.

I am authorized to state that Judge Webb joins in this dissent.