### 68098. HUDGINS et al. v. BACON et al.

BIRDSONG, Judge.

This case involves the issue decided in the case of *Holmes v. Worthey*, 159 Ga. App. 262 (282 SE2d 919), affirmed 249 Ga. 104 (287 SE2d 9). Plaintiffs (Hudgins) sued the builder-sellers (Bacon and

Loomis) of a new house for negligence and for breach of contract for failure to build the house in a workmanlike manner.

We will state at the outset that because there is evidence supporting the plaintiffs' verdict, we must reverse the trial court's judgment notwithstanding the jury verdict. But the plaintiffs' verdict will not be reinstated because the trial court also granted a new trial in the event its judgment n.o.v. were reversed, and the evidence does not "require" the plaintiff's verdict. OCGA § 5-5-50. *Helton v. Zellmer*, 238 Ga. 735, 736 (235 SE2d 35); *Hicks v. American Interstate Ins. Co.*, 158 Ga. App. 220, 225 (279 SE2d 517).

The plaintiffs James and Wanda Hudgins of Albany entered into a contract with Bacon and Loomis to build and finish a "spec" house. The record in the case shows that this written contract (which the plaintiffs unsuccessfully sought to place in evidence) expressly required defendants to complete the house "in a good workmanlike manner." The trial court granted a directed verdict as to the contract count because of the misapprehension that under *Holmes* the contract merged into the deed at delivery. The plaintiffs then sought to show, pursuant to the language in *Holmes* (pp. 271-272), that there were defects in the house which they could not have discovered in the exercise of reasonable diligence but which the defendants knew or should have known were present. Throughout the trial, however, defendants argued that the plaintiffs had to prove the "professional standard of care." Ultimately the trial court agreed that no actionable negligence had been shown and rendered a judgment n.o.v. Several grounds in support of this judgment n.o.v. are urged by the defendants. *Held*:

1. Within a few months after plaintiffs moved into the house, the brick veneer began to crack and pull away from the house frame; it pulled away from the windows; large cracks appeared inside the house along the master bedroom wall; the bathroom tile cracked, and marble thresholds broke apart. The patio wall and the carport cracked and split and the footing itself cracked. The damage to the house, as agreed by all parties and shown in photo exhibits, is extensive.

Only that evidence necessary to the opinion will be set out. The contractor Bacon testified it was his standard procedure to install rebar (one-half inch strips of reinforcement steel) in the concrete footings of all houses he builds because rebar reinforces the concrete in the footings and strengthens the footings for the weight that will be placed on it. Rebar is installed in continuous twenty-foot sections with the ends tied together. Two strips of rebar are placed parallel in the wet concrete, four inches down with a six-inch gap between the rebars. Both Bacon and his "independent contractor" Drawdy testified that Bacon told Drawdy to put rebar in this house. Drawdy testified he did put rebar in the footings continuously throughout the

house.

Thomas Driggers, a mechanical and structural engineer, testified that the brick veneer was placed on the outer edge of the footing, "almost through to the edge." His letter report stated: "The cracks first observed on the rear of the house *indicated a sheared footing indicating no rebar or rebar not [encased] in the concrete. . . .* The rear wall appears to have a sheared footing and the left hand side dropped while the [righthand] side appears to have risen." (Emphasis supplied.) He added at trial: "What's happened, the footing has actually come apart. . . . my opinion at the time was that *there was no steel in the footing and that's why it cracked, because of uneven loads*; the soil had not been compacted." (Emphasis supplied.) He described what he meant by "uneven loads": "The brick was placed on the outer edge of that piece of concrete, which would cause the footing to rotate slightly because of the offset loading on that piece of concrete. That could have twisted it and broken it." This witness testified in essence that whatever were the problems with the soil or uneven loads, it was ultimately the lack of steel reinforcement (rebar) in the footings which caused the footings to shear or break.

The soils and materials engineer, Eldon Evans, testified that he drilled three three-inch diameter adjacent core samples into the concrete footings from top to bottom, across the width of the footing inside the brick veneer, and found no rebar. However, the soils engineer determined also that the soil around plaintiffs' house contained a large amount of mineral which expands in very wet weather; it was his opinion that this "expansive soil" caused the house foundation to shift. Even so, his testimony did not preclude the conclusion, consistent with the other evidence, that the foundation would not have shifted if there had been reinforcing steel (rebar) throughout the house.

It is strenuously argued on appeal (and the trial court apparently found) that the plaintiffs did not show actionable negligence because there was no showing of a standard of professional care required of builders and no evidence that any negligence of defendants caused the damage. Defendants contend that it was undisputed that it was not a required or customary building practice in Albany to conduct soil tests before building a house, and that there was no direct evidence that the brick wall should have been centered on the concrete footing. Defendants contend that the only competent evidence as to the cause of the damage was the evidence concerning the "expansive soil"; however, this is patently not true in view of the clear evidence of the mechanical and structural engineer that the lack of rebar caused the footings to crack. This evidence as to causation was competent. *Coursey Bldg. Assoc. v. Baker,* 165 Ga. App. 521, 523 (301 SE2d 688); *Pembrook Mgt. v. Cossaboon,* 157 Ga. App. 675, 679 (278

SE2d 100).

The verdict of negligence is sustained by the evidence. Bacon admitted that his own standard procedure was to put rebar in all footings so as to strengthen the walls and because of its reinforcement qualities. Bacon's testimony *that he told the subcontractor Drawdy to put rebar in this house,* and Drawdy's insistence *that he did put rebar in this house*; the contradictory evidence that there was (at least in some places) no rebar in the footings; and the causative evidence that this absence of rebar ultimately resulted in the damage, made an issue sufficient for the jury to determine actionable negligence (known or knowable defect) without proving the professional standard of care required of builders. As to this, any insufficiencies or supposed ambivalence in any witness' testimony affected its weight, not its admissibility. *Woods v. Andersen,* 145 Ga. App. 492 (243 SE2d 748). The weight and credibility of the evidence were jury questions. *Moses v. State,* 245 Ga. 180 (263 SE2d 916).

The problem apparent in this case is that the plaintiffs repeatedly sought to show, consistent with the language in *Holmes* authorizing the cause of action, that there were "latent defects" which plaintiffs could not have discovered with reasonable diligence, and about which defendants knew or should have known. At the same time, defendants argued that plaintiffs should prove that a distinct professional standard of care or procedure applicable to contractors had been violated. On the surface, these two principles apparently seemed to these parties to establish opposed or different standards, but they do not. The defect is the actionable negligence, and the "professional standard" is *generally* the only competent means by which such negligence can be proved in professional liability cases. This is so for the obvious reason that in cases asserting professional negligence the jury cannot be left to speculate too freely on what constitutes actionable negligence. *Hughes v. Malone,* 146 Ga. App. 341, 345 (247 SE2d 107). But, equally obviously, *if the defendant himself testifies that he should have performed and did perform an act which the evidence shows he did not perform, and if causation is shown, the case may become a "clear and palpable" case of negligence and proof of a professional standard is not required.* See *Hughes v. Malone,* supra.

It is well established that " '[t]he law imposes upon persons performing architectural, engineering, and other professional and skilled services the obligation to exercise a reasonable degree of care, skill, and ability, which generally is taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances [this proviso would encompass any special local community considerations, such as excessively expansive soil], is ordinarily employed by their respective professions.' *Housing Auth. v. Ayers,* 211 Ga. 728, 733 (88 SE2d 368) (1955)." (Emphasis supplied.)

*Rhodes-Haverty Partnership v. Robert &c. Assoc.*, 163 Ga. App. 310, 311-312 (293 SE2d 876). This rule applies to building contractors. *Allied Enterprises v. Brooks*, 93 Ga. App. 832 (93 SE2d 392).

In an action against a builder, "[i]t is essential to present competent evidence as to the acceptability of specific professional conduct." *Coursey Bldg. Assoc. v. Baker*, supra, p. 523. The contractor Bacon presented evidence as to the acceptability of his own specific conduct in this case, by testifying that he always puts rebar in his houses and that he did put rebar in this house. It is generally true that one expert's opinion that certain procedures should have been utilized does not properly establish the standard of care of a profession (see *Wagner v. Timms*, 158 Ga. App. 538, 539 (281 SE2d 295)), but it is possible for evidence to establish a known or knowable defect without proof of a professional standard, if the proof is clear and palpable to the jury. *Hughes*, p. 345.

The determination of whether a "defect" existed which the homebuyer could not have discovered and which the builder knew or should have known, is the grounds for actionable negligence set forth in *Holmes v. Worthey*, supra. That language was the delineation of *Holmes'* extension of liability from fraud to negligence. *Holmes*, supra, p. 271. See also *Worthey v. Holmes*, supra, pp. 105-106. That language does not *replace* the standard of care which is generally required to prove negligence in cases against builders and other professionals. As earlier pointed out, the known or knowable "defect" as described in *Holmes* is the actionable negligence; the "standard of care in the profession" is only the means by which such professional negligence is *generally* proved.

The contractor Bacon testified that his own standard procedure is to put rebar in all concrete footings to reinforce and strengthen the footings. This is not proof of the "standard of care in the profession generally" (*Wagner v. Timms*, supra). But in this case there was "competent evidence as to the acceptability of (the) specific professional conduct" (*Coursey Bldg. Assoc.*, supra) of failing to install or properly install rebar. Bacon's testimony that he did put rebar in the footings, with the evidence that there was no rebar in at least part of the footings and the causative evidence that this lack of rebar caused the footings to "shear," is evidence of a defect which the defendants "knew or should have known." Thus in this case, although it may be the rare one, the jury could find clear and palpable proof of actionable negligence without advertence to the standard of care in the profession. In the usual case, in order to prove a breach of legal duty, it is necessary to prove deviation from a specific professional standard of care; but after all, the "professional standard" is a means to the end of proving negligence. Where a defect is proven which the builder knew or should have known, and that defect is shown to be the cause

of damage, actionable negligence has been established (*Holmes v. Worthey,* supra) and we cannot say such proven negligence should be ignored merely because the plaintiff was able to prove it without the means of the "professional standard."

2. The trial court erred in directing a verdict for defendants on plaintiffs' claim for breach of contract for failure to build the house in a workmanlike manner. The court apparently based its ruling on the misapprehension that under *Holmes,* the contract to build, and any of its terms, merged into the deed upon delivery of the deed. To the contrary, a major premise of *Holmes* is that the written contract to build does *not* merge into the deed because where the contract to build " 'contains provisions imposing obligations upon the vendor *other than those relating to title or possession, and . . . collateral thereto . . . such collateral provisions will be held to survive the deed.*' [Cits.]" (Emphasis supplied.) *Holmes,* supra, p. 267. Whether the contract to build is to be performed or finished before or after delivery of the deed, is irrelevant. *Holmes,* p. 266. Transfer of the deed, which is performance only of the agreement to convey, does not extinguish any duties and obligations arising out of the agreement to build. *Holmes,* p. 267. See also *Worthey v. Holmes,* 249 Ga. 104, 105 (1), supra.

Defendants contend the plaintiffs cannot complain of the directed verdict because no enumeration of error was made as to the exclusion of the contract from evidence. The plaintiffs' enumeration of error fairly encompasses the exclusion of the contract. See OCGA § 5-6-48 (f).

3. The standard of proof on the contract claim for breach of the express duty to build the house in a fit and workmanlike manner is essentially the same as for proof of negligence. " 'The law imposes upon building contractors and others performing skilled services the obligation to exercise a reasonable degree of care, skill, and ability, which is generally taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by others of the same profession. [Cits.]' " *Howell v. Ayers,* 129 Ga. App. 899, 900 (202 SE2d 189). *Holmes,* supra, p. 266. However, the subject matter of such a claim is the *contractual* obligation of the builder to build the house in a fit and workmanlike manner. *Holmes,* supra, p. 268. In a *negligence* claim, the subject matter "depends for its existence upon a comparison of the knowledge and expertise of the builder-seller with that of the purchaser." *Worthey v. Holmes,* supra, p. 106; see esp. *Holmes v. Worthey,* supra, pp. 270-272. As in every negligence case, an analysis is required of the comparative exercise of care of both parties. But, the plaintiff's own actions will generally (in the absence of some special equity like waiver) not be relevant in a breach of contract claim,

where the duty to build a fit and workmanlike product is the builder's express contractual obligation. This distinction and the one discussed in Division 4 herein, illustrate the efficacy of suing for both breach of contract and negligence. Of course, where there is no contract to build, but only the purchase of the house, the negligence count stands alone.

4. Defendant Loomis, the alleged real estate investor, no doubt (like the builder Bacon) never drove a nail, but he was obligor to the contract to build the same as was the builder Bacon. If the house had never been built at all, the plaintiffs could have sued Loomis for the breach; if the express or implied agreement to build in a fit and workmanlike manner has been breached, the obligor Loomis may be liable just the same. Too fine distinctions between builders and mere investors, partners, or joint venturers — none of whom may have driven a nail, but who have held themselves out to construct and sell fit houses — may defeat the purpose of the action which is, ultimately, to render the builder-sellers liable for unfit work. Directed verdict and judgment n.o.v. in favor of Loomis, who was a real obligor of the contract to build, was improper.

The result as to an investor would generally not be the same on a negligence count, where liability is based upon a defect which the actual builder-seller knew of or would have discovered in the exercise of reasonable care (proved *generally* by the violation of the professional standard of conduct, see Division 1, infra). Unless such knowledge can be proved against the "builder-seller" who is really no more than an investor or obligor on the contract, there would be no imputed negligence liability, and no grounds to impute the actual builder's knowledge to him, unless of course the builder is himself the employee or subcontractor of the investor as in the case of a development venture which sets itself up and holds itself out to construct and sell houses, and retains a builder to do the actual work. See OCGA § 51-2-5.

5. Defendants contend they cannot be liable for any negligence of the "independent contractor" Drawdy, who poured the footings and laid the foundation. It is suggested that, in particular, if there was no rebar embedded in parts of the concrete footing, the contractor Bacon obviously could not have known it. But in the first place, the basis of liability is the builder-seller's holding himself out as having the ability and expertise, or his assumption of the contract obligation, to build a fit and proper dwelling (see Division 3, infra; *Holmes*, supra, pp. 270-272; *Worthey*, supra, p. 106). It would be too easy for a builder-seller of a house to avoid liability by hiring inexperienced crews, providing little or no supervision, and then claiming the culprit of any negligence was an independent contractor. The contract to build, with its attendant obligations, is between the buyer and builder, not the buyer and any independent contractor. See OCGA §

51-2-5 (3); *McGinnis v. Milhollin*, 64 Ga. App. 462 (13 SE2d 591). As for a negligence claim, having held himself out as having the ability to build a fit and proper house, the builder generally cannot abdicate to an "independent contractor" his duty to do it. The right to direct and control the work is assumed and retained by the builder in these cases. See OCGA § 51-2-5 (5).

This is analogous to the policy underlying OCGA § 34-9-8, where in workers' compensation cases the principal contractor is liable for compensation to any employee of a subcontractor, which by policy definition includes an independent contractor. *Wright Assoc. v. Rieder*, 247 Ga. 496 (277 SE2d 41); *Haygood v. Home Transp. Co.*, 149 Ga. App. 229 (253 SE2d 805). The liability of the contractor in such a case is not premised on his control of performance, but is premised upon the principal contractor's having undertaken to perform and furnish certain goods or services (*American Mut. Liability Ins. Co. v. Fuller*, 123 Ga. App. 585, 587 (181 SE2d 876)). Just so, the builder has undertaken to build a fit and workmanlike house and has held himself out as having the ability to do it. *Holmes*, supra, p. 270; *Worthey*, supra, p. 106.

6. The damages awarded were within the range of evidence and supported by the evidence. Any supposed deficiencies in proof can be remedied on retrial.

*Judgment reversed and case remanded for new trial pursuant to the original grant of trial court. McMurray, C. J., Deen, P. J., Quillian, P. J., Banke, P. J., Pope and Benham, JJ., concur. Carley and Sognier, JJ., dissent.*

DECIDED JULY 10, 1984 —
REHEARING DENIED JULY 31, 1984 —

*Stephen C. Steele, Donald E. Strickland*, for appellants.
*R. Kelly Raulerson, T. Lee Bishop, Jr.*, for appellees.

CARLEY, Judge, dissenting.

I believe that the trial court correctly granted appellees' motion for judgment n.o.v. I am also of the opinion that the trial court correctly directed a verdict in favor of appellee as to appellants' contract claim. Therefore, I must respectfully dissent.

1. " 'Actionable negligence does not exist in the absence of the *breach* of some legal *duty*. [Cit.]' [Cits.]" (Emphasis supplied.) *Holcombe v. Harris*, 143 Ga. App. 173, 176 (237 SE2d 677) (1977). The majority holds that these two elements of duty and breach are sufficiently shown in the instant case. However, actionable negligence cannot be shown by the mere fact that the defendant has failed to com-

ply with his *own* previous standard of conduct. An act of "negligence" which the law renders actionable is the failure of an individual to conform his conduct to an objective rather than personal standard. "The whole theory of negligence presupposes some uniform standard of behavior . . . . '[T]he standard of conduct which the community demands must be an external and objective one, rather than the individual judgment, good or bad, of the particular actor, and it must be, so far as possible, the same for all persons, since the law can have no favorites.'" *McNeely v. M. & M. Supermarkets*, 154 Ga. App. 675, 676 (269 SE2d 483) (1980). One's own previous standard of personal conduct may be *greater* than that demanded by the community, in which case a deviation from that standard would not necessarily demonstrate the existence of negligence. On the other hand, one's own personal standard may be *less* than that demanded by the community, in which case adherence to that standard would not demonstrate the absence of negligence.

The objective and uniform standard applicable to appellees in the instant case is as follows: "'The law imposes upon persons performing architectural, engineering, and other professional and skilled services the obligation to exercise a reasonable degree of care, skill and ability, which generally is taken and considered to be such *a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by their respective professions*.' (Cit.) (Cits.) This standard of care properly is the subject of expert opinion. By analogy with other cases in which recovery has been sought against persons for their negligence in performing skilled services, it was necessary here that plaintiffs establish the standard of care applicable to defendant[s] by the introduction of expert opinion evidence. (Cits.) (Cit.) Expert testimony is required because the court and jury are not permitted to speculate as to the standard against which to measure the acts of the professional in determining whether he exercised a reasonable degree of care. [Cits.]" (Emphasis supplied.) *H. Elton Thompson & Assoc. v. Williams*, 164 Ga. App. 571, 572 (298 SE2d 539) (1982). As conceded by the majority, there was no evidence of such a standard in the instant case. "If this standard [is] not established by the necessary proof, the trial court [is] justified in the grant of a [directed verdict or judgment n.o.v.] [Cit.]" *Covil v. Robert & Co. Assoc.*, 112 Ga. App. 163, 167 (144 SE2d 450) (1965), rev'd on other grounds, *Hagan v. Robert & Co. Assoc.*, 222 Ga. 469 (150 SE2d 663) (1966).

In my opinion, the majority erroneously equates the bare showing of a causal connection between a defendant-builder's act and a certain result with a sufficient showing of his *negligence*. It is true that there was evidence that, contrary to appellees' assertions, rebar was not used in constructing appellants' house and that had rebar been

used, the house would not have cracked. However, without the requisite evidence to authorize the *additional* finding that, under similar conditions and like circumstances, rebar would ordinarily have been employed by the building profession, there is simply no evidence to authorize a finding that the failure to use rebar in the construction was a deviation from the applicable objective standard and was, therefore, an act of *negligence. H. Elton Thompson & Assoc. v. Williams*, supra. Appellee Bacon's testimony that he personally used rebar in previously constructing buildings is not sufficient to show the requisite uniform and objective standard which was breached by his failure to use rebar in appellant's home. *McNeely v. M. & M. Supermarkets*, supra. Nor is this a case of "clear and palpable" negligence. A house may have "defects" which are not attributable to its negligent construction. There was evidence in the instant case that the condition of appellants' house was the result of "expansive soil" rather than negligence in its construction. Accordingly, the mere fact that appellants' house had "defects" is not evidence of the "clear and palpable" negligence of its builders. Compare *Killingsworth v. Poon*, 167 Ga. App. 653 (307 SE2d 123) (1983). This being so, absent expert testimony that the failure to employ rebar was, under similar conditions and circumstances, a breach of the requisite standard of care, the jury in the instant case was erroneously permitted "to speculate" as to the correct standard against which to measure appellees' performance. *H. Elton Thompson & Assoc. v. Williams*, supra. In my opinion, this erroneous allowance of jury "speculation" was properly rectified by the trial court's grant of judgment n.o.v.

I do not interpret *Holmes v. Worthey*, 159 Ga. App. 262 (282 SE2d 919) (1981) as creating a new cause of action against a builder in which it is no longer necessary to show the existence of the first two elements of *negligence*, to wit: The defendant-builder's breach of the duty to employ that degree of care and skill as, under similar conditions and like circumstances, would ordinarily be employed by the building profession. "We conclude there is no reason that builders . . . of dwellings should not be held liable for *negligence* in the proper case." (Emphasis supplied.) *Holmes v. Worthey*, supra at 271. In my opinion, to recover under the "passive concealment doctrine" it is still necessary to show the defendant-builder's "*negligent* disregard of an obligation to use *ordinary care*." (Emphasis supplied.) *Worthey v. Holmes*, 249 Ga. 104, 106 (287 SE2d 9) (1982). If a defendant-builder is liable for the initial failure to disclose a subsequently manifested "defect" in a building even absent any evidence whatsoever that the "defect" is attributable to his failure to exercise ordinary care in the construction of the building, every builder becomes an insurer of his product against all "defects" which the building may subsequently develop. This is *not* the law. If a builder " 'has fully com-

plied with his obligation under the contract both as to materials used and the manner of doing the work, he is not to be accountable for unsatisfactory results.'" *Kent v. Hunt & Assoc.*, 165 Ga. App. 169, 170 (299 SE2d 123) (1983).

As I construe the "passive concealment doctrine," *if* there is a negligent disregard of the defendant-builder's duty to exercise ordinary care in the construction of a building *and* he either actually knew *or should have known* of this "defect" but the plaintiff-purchaser did not or could not have discovered it, the purchaser may recover for the damage resulting from the builder's failure to disclose the "defect." The defendant-builder's *actual knowledge* of the "defect" occasioned by his negligent construction is not a prerequisite to a plaintiff-purchaser's recovery, since caveat emptor is no longer a viable defense to an action for such "latent building construction defects." *Worthey v. Holmes*, 249 Ga. at 105. There is, in the instant case, simply no evidence whatsoever that the use of rebar in the construction of appellants' house was, under the circumstances, the ordinarily reasonable construction technique as would have been employed by the building profession generally.

I cannot construe *Holmes v. Worthey* as authority for the proposition that a defendant-builder has a duty to disclose his failure to employ any and all *possible* construction techniques regardless of whether those techniques would have ordinarily been utilized by the building profession generally. For purposes of determining a builder's negligence, a building is "defective" if ordinary care was not employed in its construction. It is not "defective" simply because another technique, even one previously employed by the defendant-builder, was not utilized. The result of the majority's decision is that a defendant-builder may now be held liable for the failure to disclose a "defect" in his product, which "defect" results from the mere failure to *re-employ* a technique of construction, the utilization of which is nowhere shown to be in the exercise of ordinary care and may in fact be in excess of that standard. I must dissent from the majority's unwarranted use of *Holmes v. Worthey* to reach this result.

2. Likewise, I must dissent from the reversal of the directed verdict as to the contract claim. Regardless of the correctness of the trial court's exclusion of the contract from evidence and regardless of whether we should properly reach the issue of its exclusion as the majority opines, the majority holds there was only evidence of a breach of the contractual provision regarding appellees' obligation to build the house "in a good workmanlike manner." As the majority correctly points out, the showing necessary to demonstrate the breach of the contractual duty to construct a building in a "workmanlike manner" is essentially the same as that necessary to demonstrate negligent construction. *Howell v. Ayers*, 129 Ga. App. 899, 900 (1a) (202

SE2d 189) (1973). However, as noted above, there simply is *no* evidence that appellants' home was not constructed with that same degree of care as would have been employed under the circumstances by the building profession generally. Thus, even if the contract had been admitted into evidence, there was no other evidence that the "workmanlike manner" provision had been breached. Compare *Francis v. Cook*, 248 Ga. 225 (281 SE2d 548) (1981). Accordingly, I believe that the trial court correctly granted a directed verdict as to the contract claim. The judgment of the trial court should be affirmed in its entirety.

I am authorized to state that Judge Sognier joins in this dissent.

### On Motion for Rehearing.

We must note here that the *Holmes v. Worthey* doctrine of liability for a defect the builder-seller knew or should have known, is not the "passive concealment doctrine" (see dissent in this case). Passive concealment refers to the "apathetic form of fraud" first allowed as an exception to caveat emptor in *Wilhite v. Mays*, 140 Ga. App. 816 (232 SE2d 141), affirmed it *Wilhite v. Mays*, 239 Ga. 31 (235 SE2d 532) and applied by the Supreme Court in *P.B.R. Enterprises v. Perren*, 243 Ga. 280 (253 SE2d 765). What we and the Supreme Court did in *Holmes v. Worthey* was extend liability beyond requirement of fraud, to negligence.

It is also worth note that in *Holmes v. Worthey*, the breach of contract action was clearly founded upon the failure to construct the dwelling in a fit and workmanlike manner, which is the duty implied in the contract to build (*Holmes*, supra, p. 266), since " '[a]s a general rule, there is implied in every contract for work or services a duty to perform it skilfully, carefully, diligently, and in a workmanlike manner.' " *Howell v. Ayers*, 129 Ga. App. 899, 900 (202 SE2d 189) (cert. denied). However, in affirming *Holmes v. Worthey*, the Supreme Court apparently "reaffirmed the inapplicability of implied warranty concepts to build-sell agreements for new homes" (*Worthey*, supra, p. 105; *P.B.R. Enterprises*, supra), although the statement was made in connection with the ruling on the negligence claim. At the same time, the Supreme Court equated the breach of contract action to what we held necessary for negligence actions, i.e., proof of a defect which the builder knew or in the exercise of ordinary care would have discovered. It therefore seems that, if there is in the sell-build contract no implied obligation to build the house in a fit and workmanlike manner, in most cases there will be only a negligence action, as necessarily the builders-sellers will soon cease to promise to build, complete, or construct the house in a workmanlike manner. For practical purposes, unless the usual duty to employ skill is implied in a contract to build

(see *Howell v. Ayers, supra*), there will be no contract actions, and all that we and the Supreme Court have said on the subject will be extinct, including the grounds for holding liable most developers and investors.

*Rehearing denied.*