### 62856. TRAVELERS INDEMNITY COMPANY v. A. M. PULLEN & COMPANY et al.

BIRDSONG, Judge.

Summary Judgment. This mountainous case involves a most convoluted series of arguments. The facts giving rise to this controversy show that in 1966 Yaksh Builders, Inc., the parent company of Ranger Construction Company, entered into a contractual agreement with Travelers Indemnity Company, whereby Travelers would issue performance bonds in behalf of Ranger to secure the faithful performance of numerous large construction projects. In order to protect itself and to learn as much as feasible about the financial condition of Yaksh-Ranger, Travelers required Ranger to obtain a Financial Statement for each operating year as well as Supplementary Financial Information from an independent audit firm. Ranger obtained the services of A. M. Pullen & Company, a firm of certified public accountants. Pullen prepared financial reports on Ranger's financial condition from 1966 through 1974, which were furnished to Travelers. Travelers issued performance bonds on behalf of Ranger (Yaksh) during the period from 1966

through 1973 amounting to a sum of approximately $200,000,000. During the years 1971, 1972 and 1973, Ranger became more and more pressed financially and ultimately defaulted on some of its contractual obligations to various owners and builders, requiring Travelers to make payments on some performance bonds commencing in November 1974. Travelers claims ultimately it had to pay an amount on the defaulted contracts amounting to $50,000,000. Travelers brought suit against Pullen in January 1977, asserting that Pullen had either negligently or fraudulently performed its auditing services, portraying Ranger (Yaksh) as a solvent, net revenue producing concern during the years 1971-1973 when in fact Ranger (Yaksh) was in an increasingly difficult situation and ultimately Yaksh (the parent company) was forced into bankruptcy. Ranger, rather than following its parent company into bankruptcy, merged with another solvent construction company (Ballenger) and continued to meet its contractual obligations. In order to protect itself, Travelers exchanged the debt obligation owed by Ranger for an equity position in the new corporation (Ranger-Ballenger), taking $2,000,000 in cash and $10,000,000 in shares in the new corporation and agreeing to advance additional capital as required. In exchange therefore, Travelers relinquished the indebtedness owed by Ranger. After extensive discovery (consisting of 40,000 pages of record), Pullen moved for summary judgment. The trial court in a very brief, non-illuminative order, granted summary judgment to Pullen. Travelers brings this appeal enumerating as error the grant of summary judgment. *Held:*

1. In presenting its motion for summary judgment, Pullen premised its motion on substantially eight separate bases. Inasmuch as the trial court did not indicate upon what ground it granted the motion (nor was the trial court required so to do), Travelers has presented its arguments and refutations in its briefs upon all eight potential grounds. This has resulted in multiple briefs and appendices being presented to this court with approximately 1,400 pages of facts, arguments, and discussion. Inasmuch as we too cannot determine with certainty upon which ground the trial court acted, we will consider each of the arguments made by the parties to the appeal.

2. In one of its primary contentions, Travelers contended in its pleadings that Pullen was grossly negligent in conducting its audits. Travelers presented evidence that Pullen's audits showed Ranger earning net income each year of 1971, 1972 and 1973 of approximately a quarter of a million dollars. Each year, its net worth increased by nearly an equivalent amount, as did asset inventory. Travelers offered evidence that upon such glowing reports (which showed business performance opposite to most construction company trends

in the same time frame) its continued issuance of performance bonds was consistent with good business practices. After Yaksh went into bankruptcy, Travelers retained its own audit expert who determined that each year during the period 1971-1973, Ranger's records actually disclosed a net loss with a highly visible difference in income of well in excess of a million dollars less than portrayed in the financial statements prepared by Pullen. Travelers argues that had Pullen performed even routine examination of cash flow and expense documents dealing with Ranger's operations, Pullen would not have furnished such glowing financial statements. In addition to Travelers allegations of negligence on the part of Pullen, Travelers contends that Pullen also was guilty of fraudulent misrepresentation by its certification that the examinations were made in accordance with generally accepted auditing standards and that such statements fairly represented the financial position of Yaksh, Inc. (Ranger), when Pullen knew such certification misrepresented the scope and thoroughness of Pullen's audit. Thus, Travelers sought damages for the tortious injury resulting from Pullen's submission of grossly inaccurarate financial statements.

Pullen resisted these counts and as the basis of its motion for summary judgment relating to the issues of negligence and fraud contended that there was a lack of privity between Pullen and Travelers. Pullen relies mainly on the cases of *MacNerland v. Barnes,* 129 Ga. App. 367 (199 SE2d 564); *Howard v. Dun & Bradstreet,* 136 Ga. App. 221 (220 SE2d 702); Dworman v. Lee, 441 N.Y.S.2d 90; and Ultramares v. Touche, 255 N.Y. 170 (174 NE 441), for the general principle that third parties may not recover from an accountant in the absence of privity. Quite aside from the fact that we distinctly held otherwise in *Ga.-Car. Brick &c. Co. v. Brown,* 153 Ga. App. 747, 748 (266 SE2d 531) and *Sawyer v. Allison,* 151 Ga. App. 334 (259 SE2d 721); (see also *Hines v. Wilson,* 164 Ga. 888, 889 (139 SE 802)); *Young v. Hall,* 4 Ga. 95 (4), 100, we do not read those cases cited by Pullen with such a limited rationale. As we view the reasoning of those decisions (*MacNerland,* supra; *Howard,* supra), a third party is entitled to recover from an accountant, despite the absence of privity, where the third party is in a limited class of persons known to be relying upon representations of accountants. What those cases do seem to hold is that if the third party is included only as a member of the general public who relies upon the representations of the accountant, there is too tenuous a relationship to warrant a legal liability being imposed upon an accountant whose negligence or fraud might have worked an injury. Travelers presented evidence, which if believed, would have warranted a conclusion that Pullen was informed by Yaksh that Travelers required financial statements and would rely

upon those statements in deciding the propriety of issuing new performance bonds. Travelers presented a clear question of fact whether Pullen was aware of Travelers' interest in the financial statements, and thus whether Travelers would rely upon or be directly injured by its representations. See *Bodin v. Gill,* 216 Ga. 467 (117 SE2d 325); and *Ga.-Car. Brick,* supra. Georgia courts have held that persons performing professional and skilled services are required to exercise ordinary care in the performance of those services and that duty may extend to persons with whom the professional is not in privity. These cases have allowed recovery by such third persons for damages attributable to the negligent performance of those professional services. *Bodin v. Gill,* supra; *Chastain v. Atlanta Gas Light Co.,* 122 Ga. App. 90 (176 SE2d 487). At the very least, we conclude Travelers has created a question of fact as to the intent and purpose of Pullen and Ranger in the preparation of the financial statements in relation to Travelers. It follows that the trial court could not have based the grant of summary judgment upon the lack of privity.

3. Another basis for the motion for summary judgment was that the financial statements prepared by Pullen related to estimated income for each year and not to established income. Estimates made in good faith cannot form the basis of fraud and form a poor basis for an argument of negligence. On the other hand, Travelers presented expert evidence that Pullen's annual reports related to year-end financial condition and while certain estimates may have been included, Pullen was certifying that the report reflected Ranger's actual year-end financial position. We must concede that at least a question of fact remains as to what Pullen actually represented. Where a question of fact remains, the trial court may not rest a grant of summary judgment on such an unresolved issue. *Lewis v. C&S Bank,* 139 Ga. App. 855, 860 (229 SE2d 765). We conclude therefore that the trial court did not base its grant of summary judgment upon this ground.

4. Another ground for summary judgment advanced by Pullen was that there was no evidence showing the extent or amount of credit it (Pullen) certified to Travelers as being safely issuable on behalf of Ranger based on Pullen's annual financial audits of Ranger. Pullen's argument continues that because there could be no limitation of its liability resulting from its representations, then Travelers should not be allowed to proceed on a theory of fraud. This argument sounds in contract theory. Pullen in effect argues that if it is going to be liable for its acts, then it should have been able to have an understanding that either Travelers or Ranger would pay a higher fee for the risk to which Pullen might expose itself. We find this

argument to be without merit. We have already held that there was a litigable issue of fraud between Travelers and Pullen. If that fraud is established by competent evidence, then the fees paid by Ranger for the professional service rendered to it by Pullen encompass not only the fee for the services rendered but for the risk incurred. A professional is liable to those in the limited class who the professional may reasonably expect to rely on his services. *Bodin v. Gill,* supra. See Mallis v. Bankers Trust Co., 615 F2d 68, 82-83 (2d Cir. 1980).

5. Pullen also argued that Travelers has failed to show that any alleged acts of negligence or fraud by Pullen were the proximate cause of Travelers loss. Pullen maintains that so far as the evidence shows, Travelers by its own negligence continued to issue bonds long after it knew or should have known that serious questions existed as to Ranger's financial condition. Thus, Pullen contends that Travelers would have suffered its losses whether or not any acts of negligence or fraud were committed by Pullen. On the other hand, Travelers offered much evidence to show that it exercised great care to protect its interest in view of the large value of the performance bonds issued on behalf of Ranger. Once again, we are confronted with a disputed question of fact. It is clear that questions of proximate cause are questions to be resolved by a jury. *Ga. Power Co. v. Womble,* 150 Ga. App. 28, 33 (256 SE2d 640). It follows that this could not be the ground upon which the trial court granted summary judgment.

6. Pullen argues that by accepting $2,000,000 in cash and $10,000,000 in stock in the new Ranger Construction Co. and substituting its debt position for an equity position, this constituted a release of Ranger from its debt to Travelers. Pullen then contends, assuming arguendo that there was gross negligence or fraud involved in the preparation of Ranger's financial statements, the figures were furnished to it by Ranger and it was Ranger who actually submitted the financial report to Travelers. Thus, Pullen argues that Ranger was a joint tortfeasor with Pullen and the release of Ranger by Travelers released Pullen. *Maxey v. Hospital Auth. of Gwinnett County,* 245 Ga. 480 (265 SE2d 779).

Our problem with this argument is in finding that the documents passed between Travelers and Ranger constituted a release of a claim. Though Pullen makes persuasive arguments that the verbiage of the Stock Receipt and the Stock Subscription indicate that the indebtedness, as a claim, was released, Travelers makes equally cogent arguments that it never was the intent of either Ranger-Ballenger or Travelers to release any claim that Travelers might have against Ranger or any other tortfeasor. To the contrary, Travelers asserts this was nothing more than a receipt. Thus, the trial court was faced with an unresolved question of fact as to whether the

document was a release or a receipt. In order for the trial court to conclude that Travelers and Ranger executed a "release," the court would have to ignore the fact the document on its face is designated as a "receipt" for shares of stock, as well as the sworn testimony by way of affidavit and deposition of each of the parties to the execution of the receipt that they intended nothing more than a receipt and did not intend the transfer of stock to extinguish Ranger's indebtedness to Travelers. Opposed to the maker's uncontradicted assertion that it was a receipt, a third party to the agreement, Pullen, musters only an argument from the face of the document (and in disregard of the intent of its makers) that the document is a release. It has been the law of this state from its very early judicial history that parol evidence relating to the intent of the makers thereof is admissible to clarify an ambiguous document denominated a receipt but questioned to be in actuality a release. *Bell v. Boyd & Brumby,* 53 Ga. 643 (1). In that case Bell leased to Boyd and Brumby a storehouse and assigned the lease to Longley and Robinson but reserved the right to resume the collection of rents upon payment of all past rents to Longley and Robinson. Almost a year later, Bell paid past rents to Longley and Robinson, taking a receipt which in its body recited that Longley and Robinson released and discharged Brumby and Boyd from all further liability for future rents upon said property. Bell then sued for a rental payment. The court held this document to be ambiguous on its face and concluded that parol evidence as to the intent of the parties was admissible to explain the ambiguity in the lease, both latent and patent.

Ambiguity in a contract may be defined as duplicity, indistinctness, an uncertainty of meaning or expression. *Novelty Hat Mfg. Co. v. Wiseberg,* 126 Ga. 800 (55 SE 923). Parol evidence is admissible to explain all ambiguities, the question as to what was intended being an issue of fact for the jury. *Tarbutton v. Duggan,* 45 Ga. App. 31 (7) (163 SE 298). In this case, the uncertainty of meaning between a document denominating itself a receipt but containing language consistent with a release, triggered an issue of ambiguity, requiring a jury's resolution of the ambiguity by consideration of parol evidence as to the intent of the parties. *Taylor v. Estes,* 85 Ga. App. 716, 718 (70 SE2d 82).

Though it is the duty of the court to construe contracts, the trial court may not construe an inherently ambiguous contract. *Guest v. Mitchell,* 156 Ga. App. 815 (275 SE2d 799). Such a document requires the admission of parol evidence to ascertain the intention of the parties. Code Ann. § 20-704; *Taylor Freezer Sales Co. v. Hydrick,* 138 Ga. App. 738, 739 (227 SE2d 494). Inasmuch as courts are not at liberty to revise or remake contracts while professing to construe

them (*Smith v. Standard Oil Co.,* 227 Ga. 268 (1) (180 SE2d 691); *Stuckey v. Kahn,* 140 Ga. App. 602, 606 (231 SE2d 565)), we must conclude that the trial court did not resolve this ambiguous contract by concluding it to be a release nor predicate its grant of summary judgment thereon.

7. Pullen advanced as a ground for its motion for summary judgment the argument that Travelers' complaint was barred by the running of the statute of limitations. We can reject this ground on the face of the argument. Pullen and Travelers both agree that any losses incurred by Travelers that predate four years from the filing of the complaint in January 1977 are barred by the statute of limitations. Their only disagreement relates to the point at which the four years begins to run. One party in effect argues that no cause of action arose until Travelers actually made payment of bonds. The other counters by arguing that a cause of action arose when a bond actually was issued. These arguments miss the point. Both parties agree that at least some of the monetary losses are cognizable, assuming a cause of action otherwise exists. Thus what each party admits is that the trial court should have granted a partial summary judgment as to those claims advanced by Travelers which fall without the four-year period. Yet the trial court did not grant a partial summary judgment, but extended the summary judgment to the entire cause of action. Manifestly then, the trial court did not rely on a theory of limitations to issue its order. Until the trial court determines at what point the four-year period commences, there is nothing for us to review in relation to a statute of limitation issue.

8. Travelers argued that even though the auditing services emanated from a contract between Ranger and Pullen, Travelers was a third party beneficiary inasmuch as the intended benefits of the financial information furnished was for Travelers. Pullen argues equally forcefully that there was no competent evidence showing that Pullen and Ranger intended to benefit Travelers. Once again, we are confronted with a question of fact as to what intent, if any, may be found within the agreement between the accounting firm and the principal concerning the principal's surety. There can be no question that Travelers may, under proper circumstances, be a third party beneficiary. *M. R. Thomason & Assoc. v. Wilson,* 125 Ga. App. 658 (188 SE2d 805). This likewise was a matter for a jury and could not furnish a viable ground for grant of summary judgment.

9. Related to the arguments discussed in division 2 of this opinion dealing with negligence and fraud, Pullen also advanced the argument that Travelers did not exercise due diligence in protecting its own interests but continued to issue bonds long after it was aware of Ranger's difficulties. For the same reasons discussed in division 5

of this opinion, we conclude that there was a substantial question of fact presented as to whether Travelers exercised reasonable care to protect its interests. Issues of due diligence are for a jury's consideration. *Cato v. English,* 228 Ga. 120, 122 (184 SE2d 161). Thus, this argument presented no ground for grant of summary judgment.

10. Based on the foregoing and after a thorough review of each and every ground for the grant of summary judgment as well as the authority cited in support of those arguments, we can find no justification for the grant of summary judgment to the appellee Pullen. Accordingly, it is our conclusion that the trial court erred in granting summary judgment to Pullen.

*Judgment reversed. Quillian, C. J., McMurray, P. J., Shulman, P. J., and Banke, J., concur. Deen, P. J., Carley, Sognier and Pope, JJ., dissent.*

DECIDED MARCH 17, 1982 —
REHEARING DENIED MARCH 25, 1982 —

*G. William Speer, Frank M. Hull, Michael L. Chapman,* for appellant.

*Richard R. Cheatham, J. Eric Dahlgren, George B. Haley,* for appellees.

SOGNIER, Judge, dissenting.

I respectfully dissent to Division 6 of the majority opinion and would affirm the lower court's grant of summary judgment.

At the time that Yaksh, Ranger's parent, encountered financial difficulties, Travelers had executed numerous performance and payment bonds for Ranger for various construction jobs. C. P. Ballenger was the majority stockholder of the Yaksh/Ranger companies and was a personal indemnitor on the surety bonds written for these companies by Travelers.

Travelers, in an attempt to mitigate its potential losses on these bonds written for Ranger, arranged for Ballenger Corporation, a viable corporation whose majority stock was owned by Ballenger, to merge with Ranger, the surviving corporation to be Ranger. This was done as an alternative to litigating with Ballenger on his personal indemnity agreement to Travelers for Ranger's loss. In addition, Ballenger agreed to put into Ranger's account $1 million in new capital to be applied to Ranger's debts thus reducing Traveler's potential bond liability. The plan was to revitalize Ranger, continue it as a good bond customer, complete the construction jobs and further reduce

Travelers' bond liability.

Recognizing that Ranger's balance sheet would show a large debt or contingent liability to Travelers, Travelers agreed to exchange its debt arising out of any loss on the bonds written for Ranger for an equity position in the revitalized Ranger. Travelers executed a subscription agreement and receipt pursuant thereto, which appellees contend constituted a release of any liability owed to Travelers by Ranger.

The arrangement is set forth in the Subscription Agreement of April 28, 1976 between Travelers Indemnity Company and Ranger Construction Company. The pivotal portion of the Subscription Agreement is as follows: "Travelers shall forthwith purchase and Ranger shall sell 100,000 shares of the preferred stock of Ranger with rights and preferences as set forth in Appendix A attached hereto. The consideration for said preferred stock shall be the *exchange by Travelers of all of the debts from Ranger and its affiliates to Travelers which are outstanding as of the date of the aforesaid merger.*" (Emphasis supplied.) The stock carried a par value of $100 per share.

On the same day a receipt for the stock was executed by Travelers as follows:

"Receipt

"In consideration of the issuance of 100,000 shares of preferred stock of Ranger Construction Company, a Georgia corporation, receipt of which is hereby acknowledged, the undersigned Travelers Indemnity Company, a Connecticut corporation does hereby *exchange any and all indebtedness of Ranger Construction Company to Travelers Indemnity Company which has arisen or which may arise in the future out of the execution of bonds prior to the date of this Receipt by Travelers Indemnity Company on behalf of Ranger Construction Company.*" (Emphasis supplied.) The Receipt is dated April 28, 1976.

The majority consider the documents in question "inherently ambiguous" requiring the admission of parol evidence to explain. The majority concluded that since the contract was ambiguous, it could not, as a matter of law, be considered a release and be the basis for the trial court's grant of summary judgment. I do not agree.

The Subscription Agreement and Receipt together constitute a contract rather than a mere receipt, see *Southern Bell &c. Co. v. Smith,* 129 Ga. 558 (59 SE 215) (1907) and, as we stated in *Warrior Constructors v. E. C. Ernst Co.,* 127 Ga. App. 839, 840 (195 SE2d 261) (1973), " 'Construction of ambiguous contracts is the duty of the court, and it is only after application thereto of the pertinent rules of construction, and they remain ambiguous, that extrinsic evidence is

admissible to explain the ambiguity.' *Davis v. United Am. Life Ins. Co.,* 215 Ga. 521 (2) (111 SE2d 488). 'It does not follow that merely because there are two possible interpretations which might be employed in construing a contract the matter automatically becomes a question for the jury. If that were true the court would rarely, if ever, construe a contract as Code § 20-701 declares its duty to be. The role and function of a court is higher than that of a mere referee.' *Farm Supply Co. of Albany v. Cook,* 116 Ga. App. 814, 816 (159 SE2d 128).

"The sole question here is one of law — the construction of the release clause. It either includes the claim alleged in the sub-contractor's petition or it does not and the answer to this question must come from the court not a jury." *Warrior Constructors,* supra.

I see no ambiguity in the instruments under scrutiny here. The language used is clear and unambiguous. The only difference between the two writings appears in the words italicized. The Receipt specifically extends the Subscription Agreement to cover indebtedness arising in the future out of the execution of the bonds. This is a specific modification of the Subscription Agreement enlarging its terms. The two instruments do not conflict, nor is their meaning obscure. Where instruments are executed at the same time in the course of the same transaction, they should be read and construed together. *Hardin v. Great Northern Nekoosa,* 237 Ga. 594, 597 (229 SE2d 371) (1976). It is for the court to decide the legal effect of these documents. *Warriors Constructors,* supra. While normally a mere receipt may be explained by parol, if it embodies a *contract* between the parties and the stipulations therein are sufficiently set forth, then such paper is subject to the same rules as govern ordinary contracts in writing and parol evidence is not admissible to contradict or vary the terms or stipulations. *Sou. Bell &c. Co. v. Smith,* supra.

Having determined that the documents in question constitute a contract, unambiguous in nature, we next must determine their effect in the context of the instant case. Pullen contends that the arrangement between Travelers and Ranger, as evidenced by the Subscription Agreement and Receipt, constitutes a release of Ranger from the bond indebtedness and thus as a joint tortfeasor Pullen is likewise released. While neither instrument uses the term release, the use of the word release is not necessary in an instrument for the instrument to constitute a release. See *Donaldson v. Carmichael,* 102 Ga. 40 (29 SE 135) (1897). To determine whether or not the instruments effect the purpose contended by Pullen, we must examine the relationship between Ranger and Travelers.

The indebtedness due Travelers by Ranger arose out of the bonds, contractual relationships whereupon the default of the principal (Ranger) and indemnification by the surety (Travelers)

created a debt to the surety. The record discloses that Pullen was furnished information, including cost and profit estimates, which went into the financial statements alleged to have been relied upon by Travelers in issuing the bond to Ranger. Pullen was given this information by Yaksh's (Ranger) internal certified public accountant and such records were prepared under the direct supervision of Yaksh's internal accountant. Also, we find that the cost and profit estimates obtained from the officers of Yaksh (Ranger) by Pullen were confirmed by signed statements from these officers to the effect that the cost and profit estimates were the company's best estimates of such future costs and profits. Therefore, if Pullen's statements of Ranger's financial condition were misleading and induced Travelers to execute the bonds for Ranger, we find that any negligence or fraud must also be attributed to Yaksh (Ranger) and made the principal Ranger a joint tortfeasor with Pullen.

While one of Ranger's obligations arose out of a contract default, Ranger was also subject to a (tortious) action in fraud by Travelers in inducing them to write the bond based on false information. As was stated in *Cline v. Aetna Cas. &c. Co.*, 137 Ga. App. 76 (223 SE2d 14) (1975), "[i]nasmuch as the actions of the three defendants combined to produce a single indivisible injury (i.e., loss of workmen's compensation benefits) to claimant, and inasmuch as the resulting damages cannot be apportioned rationally among the defendants, the defendants must be considered joint tortfeasors." Can it be said in any way that Travelers, while releasing Ranger from its contractual obligation arising out of the bond, nevertheless, preserved a tort claim against Ranger? One can recover damages but once and, while one may pursue inconsistent remedies in contract and in tort, he cannot pursue these inconsistent remedies after satisfaction of one or the other by the receipt of damages. See generally in this regard *UIV Corp. v. Oswald,* 139 Ga. App. 697 (229 SE2d 512) (1976).

The instruments in question use the word "exchange" of all the debts from Ranger to Travelers for the stock. Webster's defines "exchange": "To part with, give, or transfer to another in consideration of something received as an equivalent, to barter, swap." In essence Travelers has swapped and transferred all indebtedness, past and future arising from their execution of Ranger's bonds, to Ranger in exchange for $10 million of preferred stock. If a debt or indebtedness is transferred to the debtor, the debt is extinguished. What can this be but a settlement of all these bond claims due Travelers from Ranger? If the debt (claim) has been extinguished (released) as between Ranger and Travelers, then can Travelers contend it has not released Ranger? I think not. It is well settled in Georgia that a release executed in favor of one joint

tortfeasor, in full settlement of damages acts as a release in favor of all other joint tortfeasors. Parol evidence is not admissible to vary or alter the terms of the release, i.e., to show the releasor's intent to retain certain of its claims against the other alleged tortfeasors. *Maxey v. Hospital Auth.,* 245 Ga. 480 (265 SE2d 779) (1980); *Zimmerman's, Inc. v. McDonough &c. Co.,* 240 Ga. 317 (240 SE2d 864) (1977); *Pennsylvania Cas. Co. v. Thompson,* 130 Ga. 766 (61 SE 829) (1908).

I would affirm the grant of summary judgment in favor of Pullen.

I am authorized to state that Presiding Judge Deen, Judge Carley and Judge Pope concur in this dissent.