## 63763. RHODES-HAVERTY PARTNERSHIP v. ROBERT & COMPANY ASSOCIATES et al.

POPE, Judge.

Rhodes-Haverty Partnership brought this action against Robert and Company Associates, Metropolitan Atlanta Rapid Transit Authority, and Fruin-Colnan Corp., seeking recovery for damages to the exterior facing of the Rhodes-Haverty Building in downtown Atlanta. Following extensive discovery, Robert & Co. moved for and was granted summary judgment. The trial court concluded that the Partnership could not maintain this action against Robert & Co. because no privity of contract had been shown between them and also because the Partnership was not a foreseeably injured entity.

On February 9, 1978 Arthur Rubloff & Company, an Illinois corporation (hereinafter Rubloff of Illinois), entered into a real estate sales contract with Shouky A. Shaheen for the purchase of the Rhodes-Haverty Building. Arthur Rubloff & Company of Georgia

(hereinafter Rubloff of Georgia), a wholly-owned subsidiary of Rubloff of Illinois, acted as real estate broker with respect to the proposed purchase. On the date the sales contract was executed, Rubloff of Georgia contracted with Robert & Co., an Atlanta firm of architects and engineers, to make a "general evaluation" of the subject building. Pursuant to this contract with Rubloff of Georgia, Robert & Co. visited the building on February 21, 1978 and conducted a "walk-through" inspection to ascertain the condition of the building as far as could be determined by visual observation. On March 1, 1978 Robert & Co. delivered its written report to Rubloff of Georgia. It is the substance of this report as it relates to cracks in the building's exterior masonry which forms the issue in the case at bar.

On May 22, 1978 the building was purchased by the Partnership, which is comprised of six partners. Five of the partners are employees of either Rubloff of Illinois or Rubloff of Georgia, and the remaining partner is Lake Michigan Properties, Inc., a wholly-owned subsidiary of Rubloff of Illinois. The Partnership contends that it relied on the Robert & Co. report in its decision to purchase the building. Robert & Co. admits that it "understood that its report could be utilized, in connection with a possible purchase of the Rhodes-Haverty Building, by Rubloff of Georgia and perhaps other unidentified persons or entities. . ." although it was never specifically advised that the Partnership would utilize or rely thereon. Several months after the acquisition, a piece of terra cotta facing broke loose from the top portion of the building and fell to the sidewalk below. Shortly thereafter it was determined that substantial repairs to the exterior facing would be required; the cost of these repairs has exceeded $139,000.00 to date.

Despite the absence of any contractual relationship between them, the Partnership filed this action against Robert & Co. to recover damages based on the foregoing structural deficiencies in the building. Count I of the complaint alleged that the inspection and written report by Robert & Co. were negligently performed because Robert & Co. did not communicate the potential seriousness of the cracks in the exterior masonry. Count II alleged a "breach of warranty" in failing to "adequately and reliably describe the observable and ascertainable defects in the building in their entirety." The evidence of record discloses considerable dispute as to the sufficiency of the inspection report by Robert & Co. Therefore, our review of this case will be limited to a determination of whether Robert & Co. owed any duty to the Partnership to exercise ordinary care in the preparation of the inspection report.

"The law imposes upon persons performing architectural,

engineering, and other professional and skilled services the obligation to exercise a reasonable degree of care, skill, and ability, which generally is taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by their respective professions." *Housing Auth. v. Ayers,* 211 Ga. 728, 733 (88 SE2d 368) (1955). "The determination whether in a specific case the defendant [who has provided such professional or skilled services] will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." Biakanja v. Irving, 320 P2d 16, 19 (49 Cal. 2d 647, 65 ALR2d 1358) (1958).

Although the Partnership was not specifically identified to Robert & Co. as a potential purchaser of the building, the evidence clearly shows that Robert & Co. knew that potential purchasers other than Rubloff of Illinois and its subsidiaries could rely upon its inspection report. We are satisfied that the report by Robert & Co. was intended to affect a limited class of third parties such as the Partnership and that such third parties might foreseeably have sustained damages attributable to the negligent performance of its services. It follows that the trial court erred in granting summary judgment based upon lack of privity and foreseeable injury to the Partnership. Accord, *Travelers Indem. Co. v. A. M. Pullen & Co.,* 161 Ga. App. 784 (2) (289 SE2d 792) (1982); *Allred v. Dobbs,* 137 Ga. App. 227 (2a) (223 SE2d 265) (1976); *Chastain v. Atlanta Gas Light Co.,* 122 Ga. App. 90 (4c) (176 SE2d 487) (1970); North American &c. Ins. v. Berger, 648 F2d 305 (5th Cir. 1981), cert. den. —— U. S. —— (102 SC 641, 70 LE2d 619) (1982); Alexander Hamilton Life Ins. Co. v. Trust Co. Bank, Case No. C76-893-A (N.D. Ga., July 29, 1979).

*Judgment reversed. Quillian, C. J., McMurray, P. J., Shulman, P. J., Banke, Birdsong and Sognier, JJ., concur. Carley, J., concurs in the judgment only. Deen, P. J., dissents.*

DECIDED JULY 16, 1982 —
REHEARING DENIED JULY 30, 1982 —

*Michael E. Utley, Harry L. Griffin, Jr.,* for appellant.
*Terrence L. Croft, James C. Huckaby, Jr., David A. Handley,* for

appellees.

DEEN, Presiding Judge, dissenting.

In *MacNerland v. Barnes,* 129 Ga. App. 367 (199 SE2d 564) (1973), Judge Quillian made a distinction, in my opinion, between an unaudited and an audited professional report. This case held that no liability obtains where an unaudited informal report is presented and later relied upon by a third party. *Howard v. Dun & Bradstreet, Inc.,* 136 Ga. App. 221 (220 SE2d 702) (1975) also followed this principle because no audited or certified business report was provided. If the title certificate or policy in *Sherrill v. Louisville Title Ins. Co.,* 134 Ga. App. 322 (214 SE2d 410) (1975) had been addressed "to whom it may concern" a different result may have been obtained. *Allred v. Dobbs,* 137 Ga. App. 227 (223 SE2d 265) (1975), one judge concurring in the judgment only, and *Johnson v. Landing,* 157 Ga. App. 313 (277 SE2d 307) (1981) appear to differ from *MacNerland,* supra, in that the inspection or report is certified and audited and a guarantee or a type of warranty exists which is based on a comprehensive complete inspection. The latter cases (a) indicate that where a third party might reasonably rely on the inspection and (b) where a definite audited, unlimited, certified, guaranteed inspection exists liability to a third party may occur.

In the instant case (a) above obtains, but (b) is absent. The informal "walk-through" inspection and "general evaluation" resembles more of an unaudited non-certified unofficial type report or opinion and is exemplified and controlled by the first two cases cited. Further, the report disclosed and there was notice as to the "cracks" appearing in the building from the "walk-through" inspection which was given and could have been then more comprehensively investigated and the damage ascertained by the third parties by obtaining proven engineering techniques. Thus, we do not reach the argued question of whether engineering is an exact science. Compare *Blount v. Moore,* 159 Ga. App. 80, 84 (282 SE2d 720) (1981). I would affirm the judgment of the trial court for the reasons outlined and affirm applying the "right for any reason rule," therefore, I must respectfully dissent.