68575. WILLIAMS v. RUNION.
(325 SE2d 441)

BIRDSONG, Presiding Judge.

Liability for Builder's Negligence. Donald Williams is a builder of residential homes in and about Dalton. Together with another, Williams developed a residential subdivision, Williams being the builder of the various homes. One of these homes was sold by Williams to an unidentified couple. When this couple failed in their attempt at financing, Williams contacted Runion whom he knew was interested in buying a residence. While Runion apparently could afford the monthly payments, she experienced difficulty in gathering a down payment. Williams deposited the down payment in Runion's behalf, and Runion moved into the house before closing.

After she had been there about a month but before closing, Runion noticed brown rust spots appearing in the sheetrock covering

and forming the walls and ceilings. Some of these spots (apparently caused by rusting nails) protruded through the sheetrock causing the plaster to fall, leaving a small hole. Eventually the nail would completely withdraw and fall to the floor. Runion called Williams to seek an explanation and possible remedy. Williams repeatedly told Runion he did not know what was causing the rust spots or the nails to fall from the sheetrock. The sheetrock had been installed by a subcontractor who had been utilized by Williams for that purpose for many years. Eventually the walls and ceilings were sprayed with a substance that covered all the spots, though nails continued to fall.

Three years after moving into the house Runion came home from work one evening and found that the entire ceiling in the living room had fallen, exposing the trusses and rafters of the roof. Ultimately the ceilings in the halls, bedrooms and in the garage all commenced to sag. Though they were braced from beneath, when the house was repaired the remaining ceilings were taken down and replaced. After the ceilings collapsed, several experts (architects and builders) were called to determine the cause of the collapse. While there was a dispute between the plaintiff and defense witnesses, by its verdict the jury apparently determined that the trusses used in the attic to which the sheetrock had been attached were made of green wood which had not been kiln dried, which was portrayed as a usual custom. The high content of moisture in the wood apparently caused the nails to rust, and as the wood dried, the wood warped and placed stress on the nails holding the sheetrock to the trusses. This apparently caused the nails to withdraw and fall to the floor. The trusses were made by Williams in his own truss manufacturing plant.

There also was evidence that three inspections were required during the progress of the building of the house, the first to inspect the foundation, the second at the time of the rough finish (when the framework of the house had been completed) to inspect the wiring, plumbing, and structural integrity of the house, and the third after the house was completed, i.e., after the walls and ceilings were in place. The county records pertaining to this house reflected that the second inspection (which might have exposed the green trusses) was not conducted. There was evidence that it was Williams' responsibility either as builder or as owner to call for the second inspection. Lastly, it was shown that the attic had no access from the interior of the house. The county building inspector as well as a builder and an architect called by Runion all testified that the building code adopted by the county had been violated by the use of green lumber, improper spacing of nails affixing the sheetrock, and the failure to have an interior access to the attic.

Ms. Runion brought suit against Williams alleging fraud in the sale of the house, asserting that Williams knew that the trusses were

made of green lumber and that he had avoided a necessary inspection which might have disclosed the presence of the lumber as well as sealing the attic so that an unwary buyer would not be able to inspect to see the condition or degree of excellence of construction. Alternatively, Ms. Runion alleged negligence in that Williams knew or should have known that the workmanship and materials were inadequate and were not in accordance with the standards and specifications of those prevalent and required in the community (i.e., the county). The jury returned a verdict of $17,000 in favor of Ms. Runion declining in its verdict to find express fraud but resting it on the negligence in construction. Williams brings this appeal enumerating six alleged errors. *Held:*

1. In his first enumeration of error, Williams argues that the trial court erred in overruling a motion for a directed verdict as to the case *founded in negligence and as to the fraud count.*

As to the fraud count, the trial court was required to view the evidence when ruling on the motion for directed verdict most favorably toward Ms. Runion (*Nationwide Mut. Ins. Co. v. Ware*, 140 Ga. App. 660, 664 (231 SE2d 556)). Clearly there was a conflict of evidence as to fraud. Thus, the direction of a verdict was neither demanded (*State Farm Mut. Auto. Ins. Co. v. Snyder*, 125 Ga. App. 352 (187 SE2d 878)) nor appropriate. *Johnson v. Mann*, 132 Ga. App. 169 (207 SE2d 663). Moreover, the jury declined to find Williams guilty of express fraud, basing its verdict upon negligence, an election authorized by the court's charge. Thus as the jury found in favor of Williams on the fraud count, even assuming error (which we do not find), the error would have been harmless as a matter of law. *Pilkenton v. Eubanks*, 139 Ga. App. 673, 675 (229 SE2d 146).

In relation to the negligence count, Williams bases his argument upon an entirely different foundation. It is his argument that the principles announced in *Holmes v. Worthey*, 159 Ga. App. 262 (282 SE2d 919) and *Worthey v. Holmes*, 249 Ga. 104 (287 SE2d 9) are not pertinent to the issues involved in this case and are in no wise controlling. In *Holmes v. Worthey*, supra, Holmes contracted with Worthey first to build a house and upon completion of the house to deed that home to Holmes. The issue was whether the warranties and promises contained in the contract to build merged with the warranty deed when Worthey deeded the house to Holmes. This court held that promises made as to serviceability and fitness for the use intended did not merge with the warranty deed provided the purchaser could establish negligence in the construction, and further provided the purchaser was not reasonably aware of the deficiencies about which the builder knew or should have known because of his superior knowledge in the trade. Williams seeks to limit the *Holmes* rationale to similar factual situations. Thus, because in this case there was no

contract between Runion and Williams to build the house, Williams contends the *Holmes* rationale does not apply. He seeks us to return to the older authority preceding our decision in *Holmes* and once again hold that any express or implied warranties in the fitness of the house merged with the warranty deed and Ms. Runion's acceptance of the house as owner subjected her to the rule of caveat emptor. See *P.B.R. Enterprises v. Perren*, 243 Ga. 280 (253 SE2d 765).

We find that argument unpersuasive. As we held in *Holmes*, the remedy sought is to correct a defect in construction where the defect is caused by actionable negligence. This actionable negligence in this case is measured by and manifested by a failure to adhere to the established and accepted standards of professional care or conduct in the community, which defect the builder knew or should have known by the exercise of ordinary care. *Housing Auth. of Carrollton v. Ayers*, 211 Ga. 728, 733 (88 SE2d 368); *Rhodes-Haverty Partnership v. Robert &c. Assoc.*, 163 Ga. App. 310, 311-312 (293 SE2d 876), affirmed sub nom. *Robert &c. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680 (300 SE2d 503); *Allied Enterprises v. Brooks*, 93 Ga. App. 832 (93 SE2d 392). A major premise of *Holmes* is that merger does not occur because a builder in effect has a duty separate from those inherent in a seller of real estate. The seller by his deed warrants title and absence of such defects as are expressly contained in the deed. On the other hand, a builder expressly or impliedly promises that he has built the house in a fit and workmanlike manner. Thus, the law imposes upon the professional builder and others performing skilled services the obligation to exercise a reasonable degree of care, skill and ability, which certainly can be shown as that degree of care and skill which, under similar conditions and like surrounding circumstances, is ordinarily employed by others of the same profession. *Howell v. Ayers*, 129 Ga. App. 899, 900 (202 SE2d 189).

In a negligence claim, the liability for the subject matter of the claim depends for its existence upon a comparison of the knowledge and expertise of the builder-seller with that of the purchaser. *Worthey v. Holmes*, supra, p. 106; *Holmes v. Worthey*, supra, pp. 270-272. As in every negligence case, an analysis is required of the comparative exercise of care of both parties.

In this case the only evidence relative to Ms. Runion's foreknowledge as to a possible defect was the rusting nails and the nails falling out onto the floor. Ms. Runion admitted she was concerned but it is undisputed that she called the builder Williams and the subcontractor who installed the sheetrock (and the nails) and was repeatedly assured by professionals in their respective fields that the discrepancy could be cured either by painting (which was done) or by renailing. The fall of the ceiling did not occur until three years later. As to Williams, the jury apparently accepted evidence that he furnished the

trusses to which the sheetrock was nailed; that those trusses were green and full of sap and moisture; that this moisture most likely caused the rusting and warping that eventually caused the ceiling to fall; and that Williams failed to provide an interior opening to the attic, thus effectively precluding Ms. Runion from getting into the attic; that the subcontractor placed nails in the sheetrock at spacing intervals contrary to the housing code; and, finally, that the failure to provide for the intervening inspection and closing of the attic likewise violated the code. We cannot say under such circumstances that Williams did not or could not know or would not have discovered by reasonable diligence or the exercise of ordinary care that the workmanship was inferior, especially when that degree of care fell short of the standard required by others engaged in the same profession in the community. We are satisfied that the trial court properly denied the motion for directed verdict as to the negligence count. *Montgomery v. Pacific &c. Co.*, 131 Ga. App. 712, 714 (206 SE2d 631), affirmed sub nom. *Pacific &c. Co. v. Montgomery*, 233 Ga. 175 (210 SE2d 714).

2. In his second enumeration, Williams contends the court erred in refusing the testimony of a real estate appraiser called to establish the current value of the house.

The measure of damages resulting from breach of warranties caused by the negligence of the seller of a house is the difference in value of the house as finished and the value of the house as it should have been finished. *Kuhlke Constr. Co. v. Mobley, Inc.*, 159 Ga. App. 777, 780 (2) (285 SE2d 236). The value of the house three years after the sale was wholly immaterial to the issue to be resolved. Evidence must relate to the questions being tried by the jury and bear upon them directly or indirectly. Irrelevant matter properly is excluded. *MacNerland v. Johnson*, 137 Ga. App. 541 (224 SE2d 431). There was no error in the exclusion of this evidence.

3. In enumeration of error 6, Williams contends it was error to allow the testimony of the current county building inspector as to standards and quality of work when the inspector was not an employee in 1979 when the house was built and sold. However, the evidence shows the witness was the custodian of the records and had researched and dealt with many county records both before and after the year 1979. He merely testified that his familiarity with county records showed the same building code was in effect in 1979 as it was in 1982 and that the use of green lumber, improper spacing of sheetrock nails, and closing in of the attic was a violation of the building code and amounted to improper workmanship. The witness clearly testified to matters within his personal knowledge and as to which he was qualified as an expert to render a professional opinion. This enumeration is without merit.

4. In his fourth enumeration of error, Williams maintains the evi-

dence was insufficient to support the verdict. The jury heard the conflicting evidence indicating that Williams knew or should have known that the trusses he prepared for use in the house he sold to Runion were made of green lumber and it was the moisture content of these trusses plus the improper spacing of the nails that caused the ceiling to fall as aggravated by the failure to make the intermediate (rough) inspection. Opposed to this was Williams' evidence that the wood used in the trusses was not green and that the subcontractor nailed the sheetrock the same way he had for years all without resultant injury.

Our responsibility on appeal is not to weigh the evidence and give a de novo opinion on where the greater weight of the evidence lies but merely to determine if there is sufficient evidence to authorize the trial court's judgment. *Hallford v. Banks*, 236 Ga. 472 (224 SE2d 35). In making this determination, it is our duty to construe the evidence to uphold the verdict instead of upsetting it. *Frost v. Williamson*, 239 Ga. 266, 268 (236 SE2d 615); *Bell v. Brewton*, 139 Ga. App. 463, 464 (228 SE2d 600). Our review of the evidence gives no cause to overturn the verdict and judgment. *Carmichael Tile Co. v. McClelland*, 213 Ga. 656, 661 (100 SE2d 902).

5. In enumerations 3 and 4, Williams complains the trial court erred in allowing interest at the rate of 12 percent to accumulate on previously-ordered interest. This attack proceeds upon two separate theories. In the first, Williams argues that the notice procedures of the Unliquidated Damages Interest Act (OCGA § 51-12-14) require that a claimant give written notice by registered or certified mail to a person against whom claim is made for unliquidated damages in a tort action. Williams contends this means that the judgment debtor must be given actual and personal notice. The facts show that Runion complied with the provisions of OCGA § 51-12-14 by sending, six months before the trial, a registered letter to Williams' proper address. However, the post office was unable to effect delivery even after repeated attempts to leave the letter at the address (as well as leaving written notice of the attempted delivery) because neither Williams nor any other person was present to accept delivery. The letter eventually was returned to Runion as undeliverable.

The question presented apparently is one of first impression as to this particular statute. In interpreting the intent of the statute, we first observe that conspicuously absent is any requirement that a return receipt is required as is the case in other statutory service requirements such as OCGA § 18-4-64 (a) (2). Moreover, the statute itself provides in subsection (c) that the interest provided by the section begins to run on the thirtieth day after the date of *mailing* and not following actual delivery and notice to the defendant.

We find the language dealing with notice in the case of *Allen v.*

*Bd. of Tax Assessors of Paulding County*, 247 Ga. 568, 569 (277 SE2d 660) instructive to our problem. That case holds as pertinent to our problem: "Under [OCGA § 51-12-14] service by mail is permissible. Upon mailing [written notice by registered or certified mail to a person against whom claim is made for unliquidated damages in a tort action] service is complete. The fact that service is complete, if unrefuted, controls. *Tyson v. Automotive Controls Corp.*, 147 Ga. App. 409 (249 SE2d 99) (1978); *Farr v. Farr*, 120 Ga. App. 762 (172 SE2d 158) (1969). It is undisputed that service was made in compliance with the provisions of [OCGA § 51-12-14]. Where service is properly made, actual notice is not required. [Cits.]

" 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' [Cits.] The notice provided by [OCGA § 51-12-14] is reasonably calculated to inform parties of matters affecting their interests. There is no constitutional requirement beyond this. We conclude that once apprised of the pendency of a lawsuit a party's constitutional right to notice and an opportunity to be heard is met by the service by mail provided by [OCGA § 51-12-14]." In this case, Runion did all the statute required and all she could have done physically to comply with the statute. See *Alpha Transp. Svc. v. Cartwright*, 248 Ga. 701 (285 SE2d 713); see also *Gen. Elec. Credit Corp. of Ga. v. Brooks*, 242 Ga. 109, 119 (249 SE2d 596).

The second facet of Williams' argument deals with the award of 12 percent interest on top of the earlier award of 12 percent interest based upon the Unliquidated Damages Act. As we perceive this issue, there are two differing awards involved. The Unliquidated Damages Act makes available to an injured party a coercive tool to offset injury and financial loss by encouraging a tortfeasor to make amends for his injurious conduct by making immediate payment short of litigation. If the tortfeasor does not take advantage of the opportunity to make his victim whole, the statute imposes a penalty, in effect, by authorizing the victim of the tort to collect damages in the form of interest from the time of the injury until the time the unliquidated damages become certain by verdict of the jury. As we view the intent of the statute, that award of interest from the time of injury to the date of judgment fulfills the purpose of the statute. This is independent of the jury's determination of an undifferentiated monetary verdict based upon the tort. While this jury verdict determines the amount of the pre-judgment interest, the pre-verdict interest is not a factor that is considered by the jury, nor should it form a part of the tortious injury.

Thus, as we attempt to reconcile pre-judgment interest with the

application of post-judgment interest, it is our conclusion that the trial judge properly may award the pre-judgment interest as a part of damages, but in the assessment of the post-judgment interest, the post-judgment interest may be applied only against the principal amount of the judgment and may not properly include the pre-judgment interest as that would allow the award of interest upon interest, a result precluded in this state. See *Barbush v. Oiler*, 158 Ga. App. 625 (281 SE2d 359); *Ga. Ports Auth. v. Mitsubishi Intl. Corp.*, 156 Ga. App. 304 (274 SE2d 699). The judgment therefore is affirmed with direction that upon remittitur the judgment be modified so that interest after judgment be applied only against the principal judgment of $17,000, otherwise reversed.

*Judgment affirmed with direction. Carley, J., concurs. Beasley, J., concurs specially.*

DECIDED NOVEMBER 29, 1984 —
REHEARING DENIED DECEMBER 13, 1984 — 

*James T. Fordham*, for appellant.
*L. Stephen Kelehear*, for appellee.

BEASLEY, Judge, concurring specially.

With regard to Division 5, I agree and simply want to add the following: The statute puts the burden on the one who has a dispute with another over an alleged tort, to "give" notice to his opponent that he will seek interest on the amount claimed if the matter is not resolved prior to trial. This has at least two effects. It serves as an inducement to a tortfeasor to make prompt payment for the damages suffered by the injured party, thus making the latter whole more swiftly and thereby preventing the exacerbation of his damages which occurs when he is deprived of relief for a long period of time. Speedy resolution is a goal recognized even by our Constitution. 1983 Georgia Constitution, Art. VI, Sec. IX, Par. I.

Second, it compensates the injured party for the loss of economic benefit he suffers from the time of the injury up to the time of judgment. By enacting this provision for prejudgment interest, which is in derogation of the common law, the legislature has recognized the reality that the loss of value for a period of time itself has value, and that in order for an injured party's compensation to be complete, he should be entitled to receive the value he is deprived of by reason of the recalcitrant party's delay and so attributable to the factor of time.

The statute requires only that the injured party "give" notice by a specified means. It does not require him to prove that the tortfeasor received it. Of course, the claimant must do so in good faith, in a

manner reasonably calculated to achieve receipt; it must be properly addressed and adequately paid for. But he does not have to play cat and mouse with a tortfeasor who seeks to avoid notice or neglects or refuses to respond to notices of registered or certified mail, for whatever reason. To require that the claimant prove receipt would frustrate the legislative intent and would allow the tortfeasor to avoid interest, a statutorily-recognized component of full compensation, by the simple expedient of not picking up his registered or certified mail.