A95A1853. SEELY et al. v. LOYD H. JOHNSON
CONSTRUCTION COMPANY, INC. et al.
A95A1854. LOYD H. JOHNSON CONSTRUCTION COMPANY,
INC. v. R & R PLUMBING, INC. et al.
A95A1855. POWERS v. R & R PLUMBING, INC. et al.
(470 SE2d 283)

ANDREWS, Judge.

Loyd H. Johnson Construction Company, Inc. and Powers (the builder-sellers) built and sold a new residence to the Seelys. Soon after moving into the residence, Mr. and Ms. Seely discovered water leaking from the bathroom wall. The Seelys notified the builder-sellers, who sent R & R Plumbing, Inc. to fix the leak. R & R Plumbing was the company to which the builder-sellers had subcontracted the plumbing work during the construction of the residence. Rykard, a licensed plumber for R & R Plumbing, found the leak was caused by a nail driven into the bathroom wall by Singletary, who was the carpenter subcontractor during the construction. The nail had gone through the wall and pierced a pipe inside the wall. Rykard repaired the pipe by removing the nail and soldering the hole. Several days after R & R Plumbing fixed the leak, the repair failed and water again leaked from the hole. This time the leak occurred sometime during the early morning hours after the Seelys had retired for the night. When Ms. Seely got up during the night to use the bathroom, she was injured when she stepped in the water and slipped and fell.

Ms. Seely and Mr. Seely, who claimed loss of consortium, sued the builder-sellers for property damage and personal injuries resulting from the leak, claiming negligent construction or repair, breach of contract, breach of warranty, and strict liability. The builder-sellers answered denying liability and filed third-party complaints against the plumbing subcontractor, R & R Plumbing, and the carpenter subcontractor, Singletary, claiming they were independent contractors who performed the allegedly negligent work which caused the leak, and that they were liable on the basis of contribution or indemnity for any liability imposed on the builder-sellers.

The builder-sellers moved for summary judgment on the Seelys' claims. The trial court granted summary judgment in favor of the builder-sellers as to all claims for personal injury and denied summary judgment as to any remaining claims for property damage. The Seelys appeal from this judgment in Case No. A95A1853.

R & R Plumbing and Singletary moved for summary judgment on the builder-sellers' third-party complaints. The trial court granted

summary judgment in favor of R & R Plumbing as to all issues. As to Singletary, the trial court granted summary judgment as to any liability on personal injury or claims deriving therefrom and as to any remaining property damage incurred by the Seelys after R & R Plumbing first repaired the leak. The trial court denied summary judgment with respect to any remaining property damage claims which the Seelys may have incurred as a result of the leak before it was first repaired by R & R Plumbing. In Case Nos. A95A1854 and A95A1855, the builder-sellers cross-appeal from these judgments.

## Case No. A95A1853

1. The trial court erred by granting summary judgment in favor of the builder-sellers on the claims for negligent construction or repair. Because the breach of contract or warranty claims were based on the negligent construction or repair claim, summary judgment was also erroneously granted on these claims.

The builder-sellers claimed that the leak which caused the damages was entirely the fault of the independent contractors, R & R Plumbing and Singletary, over whose work the builder-sellers claim they exercised no direction and control. Compare OCGA § 51-2-5. This claim provided no basis for summary judgment in favor of the builder-sellers. The Seelys' claims against the builder-sellers alleging negligent construction or repair and breach of promises or warranties to build the residence in a fit and workmanlike manner are governed by the decisions in *Holmes v. Worthey*, 159 Ga. App. 262 (282 SE2d 919) (1981), aff'd in *Worthey v. Holmes*, 249 Ga. 104 (287 SE2d 9) (1982), in which the rule of caveat emptor was abandoned in cases involving latent defects in transactions between home buyers and builder-sellers of new homes. "[A] builder expressly or impliedly promises that he has built the house in a fit and workmanlike manner. Thus, the law imposes upon the professional builder . . . the obligation to exercise a reasonable degree of care, skill and ability, which certainly can be shown as that degree of care and skill which, under similar conditions and like surrounding circumstances, is ordinarily employed by others of the same profession." *Williams v. Runion*, 173 Ga. App. 54, 57 (325 SE2d 441) (1984). After *Holmes*, supra, "promises made as to serviceability and fitness for the use intended [do] not merge with the warranty deed provided the purchaser [can] establish negligence in the construction, and further provided the purchaser was not reasonably aware of the deficiencies about which the builder knew or should have known because of his superior knowledge in the trade." *Runion*, supra at 56; *Holmes*, supra at 272. Accordingly, as to a claim based on negligent construction, since the builder-seller holds himself out as having the ability and expertise to

build a fit and workmanlike residence, he cannot escape liability simply by claiming that an independent contractor he hired was wholly responsible for the negligent work. *Hudgins v. Bacon,* 171 Ga. App. 856, 862-863 (321 SE2d 359) (1984). In these cases, we recognize a right and a duty for builder-sellers to direct and control the work of those employed by them to the extent that an ordinarily prudent builder would exercise such direction and control to build a fit and workmanlike structure. Id. at 863. In other words, even assuming the buyers, in the exercise of ordinary care, would not have known of the latent construction defect, the issue to be determined is whether such "defects either were known to the builder-seller or in the exercise of ordinary care would have been discovered by him." *Worthey,* supra, 249 Ga. at 106.

In the present case, the initial defect was a pipe leaking inside the bathroom wall shortly after the Seelys moved into the new residence. Only property damage resulted from this defect. The Seelys reported this defect to the builder-sellers, who sent R & R Plumbing to repair the hole in the pipe. The repair by R & R Plumbing was not successful and the pipe started leaking again from the same hole after a few days. There is no evidence that the Seelys knew or should have known of either of these defects before, on each occasion, they discovered water leaking from the bathroom wall. When she slipped and fell in the bathroom, Ms. Seely was unaware that the pipe had started leaking again. Furthermore, there was evidence creating a jury question as to whether, in the exercise of ordinary care, she should have seen and avoided the water hazard on the floor before she stepped in it and fell. See OCGA § 51-11-7.

The defect which caused the personal injuries at issue and any further property damage after the attempted repair was the failure to repair the leak in the pipe after it was first discovered by the Seelys and reported to the builder-sellers. Rykard, the licensed plumber who repaired the leak, stated that the soldering method he used to repair the pipe was the generally accepted method of making such a repair. In his deposition, however, he admitted that after he made the repair the pipe started leaking again from the same place because of either a failure of the materials he used or a failure of his workmanship in doing the job. Although R & R Plumbing later filed affidavits by Rykard and another licensed plumber stating that, in making the repair, Rykard complied with the standard of care ordinarily employed by plumbers under the circumstances, these affidavits contradicted the sworn testimony given by Rykard in his deposition without giving any reasonable explanation for the contradiction. Accordingly, under the rule stated in *Prophecy Corp. v. Charles Rossignol, Inc.,* 256 Ga. 27 (343 SE2d 680) (1986), the contradictory testimony is construed against R & R Plumbing on summary judgment leaving an issue of

fact as to whether R & R Plumbing negligently repaired the pipe.

There was also evidence concerning the lack of a protective shield over the pipe at issue to protect it from the possibility of being pierced by a nail during construction. There was evidence that no such protective shield had been placed over the pipe, and competent expert testimony was given by an engineer that it was a standard practice in the construction industry for builders to ensure that such protective shields were installed. See *Hudgins*, supra at 858; *Coursey Bldg. Assoc. v. Baker*, 165 Ga. App. 521, 522-523 (301 SE2d 688) (1983). The expert testimony of two licensed plumbers that it was not the responsibility of plumbers to install protective pipe shields in residential construction jobs was disputed only by the expert testimony of an engineer. There was insufficient evidence to establish any overlapping expertise between the engineer and the plumbers with respect to this aspect of construction, so the engineer was not competent to establish the professional duty of the plumbers. See *Riggins v. Wyatt*, 215 Ga. App. 854, 855-856 (452 SE2d 577) (1994). Other evidence showed that Singletary, the carpenter subcontractor, drove the nail that punctured the pipe.

Although evidence of alleged negligent conduct that caused the initial hole in the pipe is relevant to any claim for property damage resulting from the leak that preceded the repair of the pipe, it is not relevant to the claims for personal injury and property damage subsequent to the failed repair of the pipe. This is because any negligent acts that initially caused the hole and the first leak prior to the repair were not a proximate cause of any damages resulting from the second leak after the attempted repair. The alleged negligent failure of R & R Plumbing to fix the leak after it was discovered intervened between the prior acts and became the sole proximate cause, if any, of the personal injuries and subsequent property damage. " '[I]f the author of the latter negligence, with the intermediate effects of the former negligence consciously before him, is guilty of a new negligent act which preponderates in producing the injurious effect, we say that the first negligent cause is not the proximate cause, that the intervention of the latter negligence breaks the chain of causal connections so far as juridic purposes are concerned.' *Ethridge v. Nicholson*, 80 Ga. App. 693, 696 (57 SE2d 231) (1950)." *Black v. Ga. Southern &c. R. Co.*, 202 Ga. App. 805, 807 (415 SE2d 705) (1992). While the issue of proximate cause is usually left to a jury, in plain and undisputed cases the court may make the determination as a matter of law. *Southern Bell Tel. &c. Co. v. Dolce*, 178 Ga. App. 175, 176 (342 SE2d 497) (1986).

Under these facts, a jury issue remains as to whether or not the builder-sellers negligently failed to exercise a reasonable degree of care, skill and ability to direct and control the work of those employed to build the residence and whether or not the builder-sellers

breached promises or warranties to build the residence in a fit and workmanlike manner. See *Hudgins,* supra at 861 (standard of proof for negligent construction claim is essentially the same as claim for breach of express duty to build residence in a fit and workmanlike manner).

2. As to the Seelys' strict liability claim, this case deals with the alleged negligent construction of improvements to real property. It does not involve the manufacture of defective personal property. Accordingly, the trial court correctly granted summary judgment in favor of the builder-sellers on the strict liability claim. *Garrett v. Panacon Corp.,* 130 Ga. App. 641, 643-645 (204 SE2d 354) (1974); *Pennington v. Cecil N. Brown Co.,* 187 Ga. App. 621, 622-623 (371 SE2d 106) (1988).

*Case Nos. A95A1854, A95A1855*

3. Singletary was entitled to summary judgment in his favor on the third-party complaints brought against him by the builder-sellers because: (a) there is no evidence that Singletary was negligent when, in the normal course of his work, he drove a nail in the bathroom wall that, unknown to him, pierced an unshielded pipe inside the wall, and (b) in any event, putting the nail hole in the pipe was not the proximate cause of any damage that occurred after the hole was discovered and repaired. See Division 1. Accordingly, the trial court correctly granted summary judgment in part to Singletary and erred to the extent it denied summary judgment to Singletary.

4. As to the builder-sellers' third-party complaints against R & R Plumbing, we initially address whether the complaints were professional negligence actions which required expert affidavits pursuant to OCGA § 9-11-9.1, and, if so, whether R & R Plumbing waived the defense that no expert affidavits were provided as required.

The third-party complaints against R & R Plumbing alleging that plumbing work was negligently done are professional negligence actions which required the contemporaneous filing of an expert affidavit pursuant to OCGA § 9-11-9.1. In *Gillis v. Goodgame,* 262 Ga. 117, 118 (414 SE2d 197) (1992), the Supreme Court concluded that the affidavit requirements of OCGA § 9-11-9.1 "apply only to those professions recognized under Georgia law in OCGA §§ 14-7-2 (2); 14-10-2 (2), and 43-1-24." Under OCGA § 14-10-2 (2), professional service includes "any type of professional service which may be legally performed only pursuant to a license from a state examining board pursuant to Title 43." Under Chapter 14 of OCGA Title 43, the plumbing services at issue in the third-party complaints may only be performed pursuant to a license issued by the Division of Master Plumbers and Journeyman Plumbers of the State Construction Industry Licensing Board.

OCGA §§ 43-14-3; 43-14-8. This Board is a "state examining board" pursuant to OCGA § 43-1-1. Accordingly, it is clear under *Gillis*, supra, that the third-party complaints against R & R Plumbing are professional negligence actions within the meaning of OCGA § 9-11-9.1.

Subsection (e) of OCGA § 9-11-9.1 provides in pertinent part that "if a plaintiff fails to file an affidavit as required by this Code section contemporaneously with a complaint alleging professional malpractice *and the defendant raises the failure to file such an affidavit in its initial responsive pleading*, such complaint is subject to dismissal for failure to state a claim. . . ." (Emphasis supplied.) Expert affidavits were not filed with the third-party complaints as required by OCGA § 9-11-9.1. Rather than raising the lack of expert affidavits when it filed answers to the complaints as its initial responsive pleadings, R & R Plumbing first raised the failure to file expert affidavits in its subsequently filed motion for summary judgment. Since the plain language of the statute requires that the defense be raised in the initial responsive pleading, the failure to do so was a waiver of the defense. *Colston v. Fred's Pest Control*, 210 Ga. App. 362, 364 (436 SE2d 23) (1993) (physical precedent).

The third-party professional negligence claims against R & R Plumbing were based on allegations that it negligently failed to place a protective shield on the pipe to prevent the nail hole and that it failed to properly repair the hole in the pipe after it was discovered. As to the first allegation, the only competent expert testimony was that it was not R & R Plumbing's responsibility to put a shield on the pipe. Accordingly, summary judgment was properly granted in favor of R & R Plumbing with respect to third-party claims based on property damage which occurred as a result of the initial leak from the nail hole in the pipe, prior to the subsequent repair of the pipe. See Division 1. As to the second allegation, there was evidence creating a jury issue as to whether R & R Plumbing was negligent in its repair of the hole in the pipe. Accordingly, the trial court erred to the extent it granted summary judgment to R & R Plumbing with respect to third-party claims based on personal injury and property damage which occurred after the repair when water again leaked from the pipe. See Division 1. Under this claim of negligence, the builder-sellers have a viable third-party claim against R & R Plumbing to the extent that any negligence of R & R Plumbing was the proximate cause of any liability imposed on the builder-sellers. See *Waddey v. Davis*, 149 Ga. App. 308 (254 SE2d 465) (1979); *ARA Transp. v. Barnes*, 183 Ga. App. 424 (359 SE2d 157) (1987).

*Judgments affirmed in part and reversed in part in Case Nos. A95A1853, A95A1854, and A95A1855. Beasley, C. J., Birdsong, P. J., Pope, P. J., Johnson, Blackburn, Smith and Ruffin, JJ., concur. Mc-*

*Murray, P. J., concurs as to Case No. A95A1853 and concurs in the judgment only as to Case Nos. A95A1854 and A95A1855.*

McMURRAY, Presiding Judge, concurring specially.

Since the majority recognizes a nondelegable "right and duty for builder-sellers to direct and control the work of those [subcontractors] employed by them to the extent that an ordinarily prudent builder would exercise such direction and control to build a fit and workmanlike [residential] structure," (majority opinion, ante, p. 721), it is not necessary to consider whether such a duty exists under OCGA § 51-2-5 (3). Accordingly, I concur fully in Division 1 and the reversal of summary judgment in Case No. A95A1853. I also concur fully in Division 2 and the absence of strict liability against the defendant builder-sellers. In Case Nos. A95A1854 and A95A1855, I fully concur with Division 3 that there is no evidence that cross-defendant Douglas L. Singletary, the carpenter subcontractor, was negligent when he nailed the bathroom wall baseboard or shoe molding, thereby piercing the unprotected or inadequately protected water pipe behind the sheetrock. Consequently, summary judgment was correctly granted to him. With respect to cross-defendant R & R Plumbing, Inc., it remains my view that the defense of failure to file an OCGA § 9-11-9.1 expert's affidavit can be raised for the first time in a motion under OCGA § 9-11-12 (b) (6), under the holding of *Hewett v. Kalish*, 264 Ga. 183, 184 (1), 185 (442 SE2d 233). Consequently, I concur in the judgment only with respect to the partial reversal of summary judgment as to R & R Plumbing, Inc.

DECIDED MARCH 15, 1996.

*Barham, Dover, Bennett, Miller, Sherwood & Stone, John R. Bennett*, for Seely.

*Young, Thagard, Hoffman, Scott & Smith, H. Pearce Scott*, for Loyd H. Johnson Construction Company, Inc.

*Elliott & Blackburn, W. G. Elliott, W. Gus Elliott II*, for R & R Plumbing, Inc.

*Langdale, Vallotton & Linahan, Willie J. Linahan*, for Powers.